STUYVESANT INSURANCE COMPANY OF NEW YORK, Appellant,

v.

Vincent NARDELLI, Robert G. Nardelli and William Nardelli, Appellees.

No. 18316.

United States Court of Appeals Fifth Circuit.

Feb. 3, 1961.

John P. Corcoran, Jr., William E. Henson, Jr., Tampa, Fla., for appellant.

Ralph C. Dell, Allen, Dell, Frank & Trinkle, Tampa, Fla., for appellees.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

On January 4, 1955, Aseguradora Del Sureste, S.A., filed an amended libel in rem against the motor vessel Narco and in personam against Nardelli (a partnership) as charterers for damages arising out of a collision between the Narco and the Lolita occurring in the Gulf of Campeche, approximately 12 miles off the coast of Mexico.

On March 5, 1956, Nardelli filed a petition against appellant Stuyvesant under Admiralty Rule 56, 28 U.S.C.A. In short, this petition alleged that a policy issued by Stuyvesant covered Nardelli's potential liability in the libel action. Stuyvesant answered that its insurance agreement did not cover Nardelli. The trial court, on December 17, 1956, entered judgment in rem against the Narco and in personam against Nardelli in the amount of $29,075.00, together with interest from July 24, 1953 (the date of the collision) in the sum of $5,756.85. The court dismissed Nardelli's petition against Stuyvesant.

Nardelli appealed that portion of the decree dismissing its third-party petition against Stuyvesant. This Court reversed and held that the "Running Down Clause extended the insurance to Nardelli as charterer for this collision and up to the full amount of the policy." [1]

On remand, the district court declined to grant Stuyvesant's motion to set the cause for trial, but instead ruled that no factual issues remained for determination and entered judgment for Nardelli against Stuyvesant in the full amount of the policy, $25,000.00, plus interest on this sum from July 14, 1953. The district court also awarded Nardelli $6,000.-00 as attorneys' fees.

Appellant argues, first, that the district court misconstrued the mandate of this Court in ruling that no factual issues remained to be tried. In particular, Stuyvesant argues that the policy under which it is liable to Nardelli is a policy of indemnity against loss rather than indemnity against liability.

"* * * there is a clear distinction between contracts to indemnify against liability incurred and those to indemnify against loss, the term 'loss' generally referring to an actual payment by the indemnitee. If the indemnity promised is against liability, the incurring of the liability, or, if disputed, the rendition of a judgment upon it, will entitle the indemnitee to enforce his indemnity. But if the indemnity is against losses paid, payment of course must have happened before the indemnity contract can be enforced. If this policy be of the latter class, since Wesley paid nothing on the judgment, neither he nor anyone in his right could have enforced it * * * *." [2]

The applicable policy provision is as follows:

"And it is further agreed that if the vessel and/or property insured shall come into collision with any other ship or vessel and the Assured or the Charterers or the Surety in consequence of the insured vessel being at fault, shall become liable to pay and *shall pay* by way of damages to any other person or persons any sum or sums in respect of such collision, we the underwriters, will pay the Assured or Charterers or the Surety, whichever *shall have paid* * * *." (Emphasis added.)

This language clearly provides that the insurer will not become liable under this section until Nardelli, as charterer, has *made some payment* and that the insurer is only liable to the extent those payments are made. [3] Before Nardelli can recover under the policy for "damages to any other person or per-

1. Nardelli v. Stuyvesant Insurance Co. of New York, 5 Cir., 1959, 258 F.2d 718; on second petition for rehearing, 5 Cir., 269 F.2d 592, 595.

2. Michel v. American Fire and Casualty Co., 5 Cir., 1936, 82 F.2d 583, 586.

3. Accord: Marine Transit Corp. v. Northwestern Fire & M. Ins. Co., 2 Cir., 1933, 67 F.2d 544, construing substantially similar language.

sons" it must prove payment in the amount of its recovery. In the proceedings on remand, Nardelli made no proof of payment on the libel judgment. Absent such proof, it was error for the district court to enter judgment in its favor for the full face amount of the policy.

Appellant also contends the district court erred in granting Nardelli $6,000.00 in attorneys' fees. The $6,000.00 includes both the costs of defending the libel action ($3500) and the expense of prosecuting the successful appeal to this Court ($2500).

■ Recovery of the expenses incurred in the defense of the libel action is based on the following contract clause:[4] "And in cases where the liability of the vessel has been contested * * * *with the consent in writing of a majority (in amount) of Hull Underwriters, we will also pay a like proportion of the costs* which the Assured or Charterers shall thereby *incur* or be compelled to pay * * *." (Emphasis supplied.) Stuyvesant argues that it is not liable under this clause, because it was the only hull underwriter and the proceedings contesting liability on the part of Nardelli were not taken with its consent. We think Stuyvesant cannot rely on the consent proviso to be relieved of liability for the expenses of defending the libel action. At the time Nardelli was defending itself, Stuyvesant was taking the position that Nardelli was a stranger to it. Why, in those circumstances, Nardelli should have been required to obtain Stuyvesant's "consent in writing" before defending itself escapes us. We think that Stuyvesant waived its right to rely on the consent provision when it denied that its policy covered Nardelli. As was said in a similar context:

"When the insurer elected not to assume responsibility at that time * * * it took whatever risks attached to [that] action, and cannot now be heard to complain that legal fees and disbursements were incurred in the [defense] of the claim * * *: The plaintiff was at all times entitled to the benefits accruing under his policy, and should have received them at the time of making his claim. The fact that, because of the attitude of the defendant, he has been put to a great deal of trouble, annoyance and expense, certainly furnishes no valid reason for transferring the burdens of the defendant to the plaintiff. The plaintiff has done nothing which, under the terms of his policy, can deprive him of any of its benefits." [5]

■ As to this $3500.00, Stuyvesant disclaims liability on another ground. It argues that before it can be held liable for that sum, Nardelli must make proof of payment—a defense similar to that invoked by Stuyvesant in regard to its liability for the principal amount. Here, as there, the issue turns on the language of the policy. The policy provides that where liability is contested the charterer may recover of the insured such costs of defense as the "Charterers shall thereby *incur* or be compelled to pay * * *." The term "incur," when used in policies of insurance, has a fixed legal meaning. "A debt has been incurred when liability attaches; a contingency promise to pay has been incurred when the contingency upon which the payment depends occurs."[6] Nardelli became liable to compensate its attorneys when those attorneys engaged in the defense of the libel action. It was then that the costs of the defense were "incurred." The difference between Stuyvesant's liability for the judgment rendered against Nardelli in the libel action and its liability for the costs of Nardelli's defense in that action is thus clear from an examination of the policy

4. Appellee also contends that the expenses of defending the libel action are recoverable under the "Sue and Labor" clause of the policy. In the view we take of the matter we need not pass on this contention.

5. Smith v. Switzerland General Insurance Co. of Zurich, Switzerland, 1933, 147 Misc. 391, 263 N.Y.S. 193, 194.

6. Maryland Casualty Co. v. Thomas, Tex. Civ.App.1956, 289 S.W.2d 652, 655.

language. As noted above, as to the principal amount, the policy is clearly one that indemnifies against loss. But "where indemnity agreements use 'incurred' the indemnity is against liability and not against loss or damage." [7]

The remaining $2500.00 was awarded for the expenses of prosecuting the appeal and are attributable solely to the action between Nardelli and Stuyvesant. This award is based on Florida law.

Appellant relies on Sections 625.32 and 625.33 [8] of the Florida Statutes, F.S.A. as barring the $2500.00 fee. Section 625.32 provides in part:

"In any action against an unauthorized foreign or alien insurer upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business therein, if the insurer has failed for thirty days after demand prior to the commencement of the action to make payment in accordance with the terms of the contract, and it appears to the court that such refusal was vexatious and without reasonable cause, the court may allow to the plaintiff a reasonable attorney fee and include such fee in any judgment that may be rendered in such action * * *."

Section 625.33 then provides:

"The provisions of §§ 625.28–625.-32 shall not apply to any action, suit or proceeding against any unauthorized foreign or alien insurer arising out of any contract of insurance

"(1) covering reinsurance, *ocean marine*, commercial aircraft or railway insurance risks * * *." (Emphasis added.)

The difficulty with appellant's argument is that Sections 625.32 and 625.33

apply only to "unauthorized" insurers.[9] And Stuyvesant was an authorized insurer under Florida law. Thus, as appellees contend, the matter of attorneys' fees expended in recovery against Stuyvesant comes under Section 625.08,[10] Florida, Statutes, F.S.A.:

"625.08 *Attorney's fees in certain cases upon contracts and policies of insurance*

"Upon the rendition of a judgment or decree by any of the courts of this state against any insurer in favor of the beneficiary under any policy or contract of insurance executed by such insurer, there shall be adjudged or decreed against such insurer, and in favor of the beneficiary named in said policy or contract of insurance, a reasonable sum as fees or compensation for his attorneys or solicitors prosecuting the suit in which the recovery is had.

"The amount to be recovered for fees and compensation for attorneys and solicitors against such insurer shall be ascertained and fixed by the court in chancery cases or a jury in common law actions, from testimony adduced for that purpose, and shall be included in the judgment or decree rendered in such cases."

 It would appear that, under the terms of this Section, Nardelli can recover attorneys' fees expended in establishing Stuyvesant's liability on the policy.[11] Appellant argues, however, that we read the marine insurance exception of Section 625.33 back into Section 625.08, so as to preclude awards of attorneys' fees under the latter section. Appellant, not surprisingly, cites no authority in support of this contention. Nor can we read such an exception into a statute clear on its face.[12]

7. Sorensen v. Overland Corporation, D.C. Del.1956, 142 F.Supp. 354, 361.

8. Now §§ 626.0508, 626.0509 of F.S.A., 1959.

9. See Kansas City Fire & Marine Ins. Co. v. Dan Arias Shrimp Co., 5 Cir., 1959, 261 F.2d 490, 495–496.

10. Now § 627.0127 of F.S.A., 1959.

11. This section is applicable to actions brought in federal courts in Florida. Orlando Candy Co. v. New Hampshire Fire Ins. Co. of Manchester, D.C.S.D.Fla.1931, 51 F.2d 392 (Strum, D. J.).

12. In 1959 the Florida Statutes were amended to provide that the general at-

Appellant also has an alternative attack on this portion of the award of attorneys' fees. It runs as follows. Section 625.08 provides for recovery of attorneys' fees only if two conditions are met. 1) There must exist "a judgment or decree * * * against * * * [an] insurer in favor of the beneficiary * * *." 2) Attorneys' fees are only allowed in a suit "in which recovery is had." Since the judgment below allowing recovery by Nardelli is here reversed, at least as to the principal sum, the argument can be made that there is now outstanding no judgment for that sum against the insurer in favor of the beneficiary and no recovery has been "had" of the principal sum against the insurer on which an award of attorneys' fees under 625.08 can be predicated. We reject this argument. We think that our judgment in the prior appeal of this case, where we ruled that Stuyvesant was liable to Nardelli under the "Running Down Clause" is a sufficient basis for allowing recovery of attorneys' fees under 625.08. In reaching this conclusion, we rely on the case of Continental Casualty Co. v. Giller Concrete Co.[13] That was a declaratory judgment action by an insured against his liability underwriter. At the time the insured filed the action, there were two suits pending against him seeking to recover damages for personal injuries for which he was alleged responsible. The insurer took the position that its policy was void and denied coverage as to the insured. The district court in the declaratory judgment action held that the Continental's policy was in full force and effect and provided coverage for the insured, but declined to grant the insured judgment for his attorneys' fees. On appeal, this Court reversed on the attorneys' fees point, and ruled that,

" * * * Within the meaning of this statute a 'recovery is had' and the insurance company is liable for attorney's fees whenever it unsuc-

cessfully defends an action against it upon a policy or contract of insurance issued by it. The application of the statute is not limited to suits for the recovery of money. The court erred in disallowing the attorney's fees claimed by Giller Company for the prosecution of its declaratory judgment suit."

Continental Casualty Co. v. Giller Concrete Co., supra, 116 F.2d at page 433. We think that the action taken in pursuing Nardelli's successful appeal was akin to the efforts of Giller Company in the Continental case, and that the fees expended in that effort were properly recoverable under § 625.08.

Appellant finally argues that as to these attorneys' fees, Nardelli must file proof of payment before it can recover. The statute, however, makes no such requirement. In the hearing below, appellees' counsel testified in detail as to the work he had done in this cause, including the number of hours devoted to it and his standard hourly charge for legal services. In addition, several members of the bar testified on the reasonableness of the fee. Such evidence, we think, is all that is required to support a judgment under § 625.08.

Appellant finally contends that the awarding of interest on $25,000.00 (the full amount of the policy) from July 24, 1953 (the date of the collision), was erroneous. Since the insurance policy in issue provides only for reimbursement for actual payments by the beneficiaries, Stuyvesant was in no way liable to Nardelli prior to the introduction of proof that Nardelli made payments on the judgment against it. At this date there is no such proof. It was error for the court below to award Nardelli interest from July 24, 1953.

The net result is somewhat anomalous. The award to Nardelli of $6,000.00 as attorneys' fees must be affirmed, but the

torney's fees section would not apply to policies of the type sued on here. See F.S.A., 1959, §§ 627.01001(3) (Section 627.0127 inapplicable to "wet marine" in-

surance); 624.0406(1) (b) ("wet marine" insurance defined).

13. 5 Cir., 1940, 116 F.2d 431.

award of $25,000.00 plus interest thereon from July 14, 1953, must be reversed. It is so ordered. The costs of appeal are taxed two-thirds against Nardelli and one-third against Stuyvesant. Affirmed in part, and in part reversed and remanded for further proceedings consistent with this opinion.