NELLO L. TEER COMPANY and United States Fidelity & Guaranty Company, Appellants,

v.

HOLLYWOOD GOLF ESTATES, INC., Appellee.

No. 20301.

United States Court of Appeals Fifth Circuit.

Nov. 1, 1963.

Rehearing Denied Dec. 16, 1963.

Wesley G. Carey, Joseph A. McGowan, Miami, Fla., Charles B. Nye, Durham, N. C., Carey, Terry, Dwyer & Austin, Miami, Fla., for appellants.

L. J. Cushman, Miami, Fla., Lewis Horwitz, Broad & Cassel, Miami Beach, Fla., for appellee.

Before RIVES and JONES, Circuit Judges, and DAWKINS, District Judge.

BENJAMIN C. DAWKINS, Jr., District Judge.

Nello L. Teer Company (Teer), a Delaware corporation, contracted in writing in December, 1959, to raise the level of certain land at Hollywood, Florida, for Hollywood Golf Estates, Inc. (Estates), a Florida corporation. The fill for this purpose (a minimum of 1,250,000 cubic yards) was to be dredged from two lakes and a canal adjoining the property.

The contract provided for a unit price of 45 cents per cubic yard of fill, based upon the "assumption" that the contractor in dredging would encounter 50% "hard digging" and 50% "easy digging."[1] If the contractor encountered less than 50% hard digging certain reductions in the unit price were to be made, but no provision was made for the possibility that there would be more than 50% hard digging.

As it developed, all of the digging was "hard." After partial performance, having placed 275,936 cubic yards, Teer ceased operations July 13, 1961, and brought this diversity action for rescission of the contract plus recovery upon

quantum meruit. It based its claims upon 1) misrepresentations it alleged were made to it by Estates, constituting fraud, that Estates had engaged engineers to take borings of the subsoil to be dredged; that reports of such borings indicated most of the dredging would be "soft digging"; and under no circumstances would the "hard digging" exceed 50%; and 2) alleged mutual mistake of fact as to the nature of the subsoil to be dredged.

Estates answered, denying Teer's charges of fraud and mutual mistake of fact. It then counterclaimed for damages, interest, and attorney fees based upon its claim that Teer had breached the contract, also impleading Teer's surety, United States Fidelity & Guaranty Company.[2]

There is no need here for detailed analysis of the evidence, some of it hotly disputed, which was presented in the lower court. Upon the whole record, it is sufficient to say that, having seen and heard the witnesses and therefore being in the best position to evaluate their statements, the judge's findings are not clearly erroneous, Rule 52(a), F.R.Civ. P. Resolving the conflicting testimony, and upon substantial evidence, he found that Teer's claims were without merit and that Estates was entitled to recover upon its counterclaim and against United States Fidelity & Guaranty Company. To the extent of his basic findings upon the substantive rights of the parties, we affirm.[3]

---

1. "Hard digging," as defined by the contract, " * * * shall be deemed to mean where hard rock is encountered, all other digging shall be deemed to be 'easy digging.' "

2. The counterclaim further demanded judgment for the unpaid balance due upon a $50,000 loan Estates had made to Teer. Also, the City of Hollywood, Florida, intervened; but neither of these matters is involved in this appeal.

3. We here quote the judge's findings in that respect, with which we are in full accord:

"8. At all times prior to and at the time of the execution and delivery of the contract described in Finding # 6, TEER and ESTATES were dealing at arms length, and no fiduciary or confidential relation existed at any time between TEER and ESTATES and their respective agents with respect to the making of said contract. Before the contract was executed and delivered, ESTATES and its agents expressly informed TEER and its agents that ESTATES knew nothing about 'easy digging' or 'hard digging' or other problems with regard to dredging and filling operations, and that such mat-

On this appeal Teer and United States Fidelity & Guaranty Company abandoned their fraud claim, but reassert that there was mutual error in assuming the digging would be half hard, and half easy, thus vitiating the contract. They also contend that substantial error was committed by the District Court in its method of calculating the damages due to Estates; in awarding attorney fees without a hearing and in excess of the maximum allowed by Florida law; and in imposing costs in addition to those taxed by the Clerk when no motion for review had been filed by appellee within the time fixed by Rule 54(d) F.R.Civ.P.

Having already disposed of appellants' contention as to "mutual error," we now pass to consideration of the remaining points made by them.

First, as to the trial court's method of calculating damages due to Estates, we believe this was error. The Court noted that, after Teer breached the contract, appellee entered into a new contract with Arundel Corporation to complete the dredging and filling required at a unit price of 62.5¢, which was 17.5¢ per cubic yard greater than provided for in the Teer contract. It then multiplied this differential by 974,064 yards, the amount of fill not placed by Teer out of the 1,250,000 it had obligated itself to place, and arrived at a figure of $170,461.20, with 6% interest from July 13, 1961, which the Court found to be due to Estates by Teer and its surety.

Yet, there is no proof in the record as to how much fill, if any, Arundel actually delivered, or whether its price of 62.5¢ per cubic yard was the best obtainable, after diligent efforts to mitigate the damages had been made by Estates. Moreover, whereas the Teer contract recited that 470 acres were to be filled, the proof showed that Estates actually owned only 72 acres and had a purchase option on 97 more, a total of 169 acres. There was no evidence as to what rights or obligation Estates had as to the remaining 301 acres. Teer was obligated to fill the land up to certain grade posts but there was no evidence as to what that height was to be.

These serious omissions in Estates' proof mean to us that the purely mechanical award of damages in the manner and amount stated was not justified. Merely because the contract recited that 470 acres were to be filled, and that Teer was to be paid for placing a minimum of 1,250,000 yards, does not establish an estoppel against Teer and its surety in light of the absence of proof we have outlined. It may be that upon another trial appellee can succeed in establishing its actual damages in satisfactory manner, but it has not done so as yet.

ters were things which TEER and its agents must determine for itself.

* * *

"10. At all times material to this suit, TEER held itself and its agents out as duly qualified to perform the work required by the contract, and the knowledge, concerning such work and any difficulties likely to be encountered during its prosecution, possessed by TEER and its agents far exceeded any such knowledge possessed by ESTATES and its agents. TEER did not, in the execution of said contract, rely upon any statement of ESTATES and its agents concerning 'easy digging', 'hard digging', or any other difficulties which might be encountered by TEER in carrying out the contract.

"11. Before the contract was executed and delivered TEER and its agents had an opportunity to obtain full, complete and exact information, and actually made an investigation, concerning the nature of the areas where the dredging was to be performed.

"12. TEER was not induced to enter into the contract because of any false or fraudulent representations, or by concealment of material facts, by ESTATES or its agents.

"13. The contract between TEER and ESTATES was in all respects a valid and subsisting contract.

"14. ESTATES in all respects complied with all of the terms of the contract, and fully performed same insofar as required.

"15. TEER without cause breached the contract by abandoning performance on July 13, 1961, and thereby became liable to ESTATES for all damages sustained by ESTATES as the proximate result of said breach."

We have not found, nor have we been cited to, any Florida jurisprudence squarely in point here, but we are entitled to assume that, in such a situation as this, Florida courts would follow the established rules in common law jurisdictions. As we comprehend these rules, where there has been a breach of contract as in this case, with only partial performance, the contractee first must attempt to mitigate his consequential damages with due diligence and to the best of his ability—and must prove that he has done so. Next, he must prove to a reasonable degree of certainty the amount of such damages, plus any extra expenses necessarily incurred, and any loss of profits caused by the breach. Finally, and over all, except in jurisdictions where punitive damages are allowed, he must do these things with the least burden to the wrongdoer consistent with the idea of fair compensation.

We find these principles plainly enunciated at 25 C.J.S., Damages § 71. (See also §§ 46 and 75), supported by citations to a wealth of common law jurisprudence:

"* * * Stated in broad terms, however, the measure of damages is such sum as will compensate the person injured for the loss sustained, with the least burden to the wrongdoer consistent with the idea of fair compensation, and with the duty upon the person injured to exercise reasonable care to mitigate the injury, according to the opportunities that may fairly be or appear to be within his reach, and the same rule obtains whether the loss is claimed for injury to property, personal injury, or breach of contract. * *"

To the same effect see Annot. 76 A.L.R. 2d 805; § 9, pp. 830 et seq.

A fairly early decision by this Court, American Surety Co. v. Woods, 5 Cir., 105 F. 741 (1901), never overruled or criticized so far as we have ascertained, squarely held that where a construction or similar contract is breached by a contractor after partial performance, the contractee is not entitled automatically to recover the difference between the contract price and the amount which it would have cost to have the work done, unless completion actually is accomplished at a greater cost. While this case involved a Louisiana statute, the Court made it plain that the common law was to the same effect.[4] Cf. Poinsettia

---

4. "* * * It is argued from this proposition that, if the contractor wrongfully abandons the contract and refuses to do the work he has contracted to do, the employer, in a suit for damages for breach of the contract, may recover the difference between the contract price and the sum which it would have cost the employer to have the work done, although the employer in fact does not have the work done. To apply the principle to this case, the contention is that, as Stewart & McDermott agreed to finish the sewers for sums aggregating $739,500, and then abandoned the work, and as it would have cost the sewerage company $912,099.09 to complete the work, the receiver of the sewerage company is entitled to recover the difference between the contract price and what it would have cost to finish the work, to wit, $172,599.09, though in fact the work was not finished, and no money actually expended to finish it. * * *

"* * * Can it be said that the employer who has obtained a contract securing services at cheap rates, when the contractor refuses to do the work, has certainly lost the difference between the contract price and the cost of having the work finished, when the employer does not have the work finished? Is this difference a certain gain or profit or value that the employer has lost? His loss would be certain, we think, only in the event he had the work done at a cost greater than the contract price. The contention that the measure of his damages is the difference between the contract price and a greater price which he has never paid must be based on the erroneous theory that the contract is necessarily worth to him the sum above the contract price that it would cost the contractor to finish the work. The fact that the contractor would lose a fixed sum by completing the work does not show that the employer loses that sum by the failure of the contractor to finish it. If the contractor stops the work, and the employer does not complete it, it cannot be said he has been damaged what the former

Dairy Products v. Wessel Co., 123 Fla. 120, 166 So. 306, 104 A.L.R. 216 (1936) and Davis v. Stow, 60 So.2d 630 (Fla.Sup. Ct., 1952).

We conclude, therefore, that the judgment of the District Court on the question of quantum of damages must be reversed, and the case remanded for a new trial on that aspect. Of course, Teer is entitled to credit for the work it actually performed.

■ Likewise, it appearing that attorney fees in the sum of $25,000 were allowed to appellee, without hearing or proof, and it appearing further that the Florida legislature has limited such fees to a maximum of 12½ per cent of the judgment against a surety, the District Court's award in that respect also is in error. It must be reversed and remanded for proof and further consideration. Fla. Statutes § 627.0905(2) F.S.A.; Stuyvesant Ins. Co. of New York v. Nardelli, 286 F.2d 600 (C.A. 5, 1961); Nelson v. Lewis, 127 Fla. 654, 173 So. 835 (1937); Beasley v. Wolf, 151 So.2d 679 (Fla.Dist.Ct. of App., 1963).

Since, upon remand, the trial court may redetermine costs to be taxed, there is no necessity for ruling at this time upon appellants' contention that Rule 54 (d), F.R.Civ.P., was violated in taxing costs, or appellee's argument that this matter is not properly before this Court because it was not included in the judgment appealed from.

Costs of this appeal are assessed equally against appellants and appellee.

Affirmed in part; reversed and remanded in part.

would have lost had he not stopped the work. When the contractor breaks his contract he is liable to his employer for the amount the employer is damaged, but it does not follow that he is liable for the amount that the contractor saved by his abandonment of the contract. It is a mistake, we think, to assume that whatever the contractor saved by stopping the work was lost by the employer who does not complete it.

* * *

"It seems to us that the conclusion of the court in this case was correct, and that, whatever other damages may have been sustained, it cannot be said, before the work has been completed at a greater cost, that the injured party has sustained damages to the amount of the difference between the contract price and the cost of completing the work. * * *"