353 F.2d 485
 HOLLYWOOD GOLF ESTATES, INC., Appellant,
v.
NELLO L. TEER COMPANY and United States Fidelity & Guaranty
Company, Appellees.
NELLO L. TEER COMPANY and United States Fidelity & Guaranty
Company, Appellants,
v.
HOLLYWOOD GOLF ESTATES, INC., Appellee.
 No. 21983.
 United States Court of Appeals Fifth Circuit.
 Nov. 15, 1965.
 
 L. J. Cushman, Lewis Horwitz, Shepard Broad, Broad & Cassel, Lewis Horwitz, Miami Beach, Fla., for appellant and cross-appellee Hollywood Golf Estates, Inc.
 Joseph A. McGowan, Wesley G. Carey, Miami, Fla., Charles B. Nye, Durham, N.C., Carey, Terry, Dwyer, Austin, Cole & Stephens by Edward A. Perse, Miami, Fla., for appellees-appellants Teer and U.S.F. & G.
 Before TUTTLE, Chief Judge, THORNBERRY, Circuit Judge, and CARSWELL, District Judge.
 THORNBERRY, Circuit Judge:
 
 
 1
 This is the second appeal of this case to this Court, the case having been affirmed in part and reversed and remanded in part when considered previously. See Nello L. Teer Company v. Hollywood Golf Estates, Inc., 324 F.2d 669 (5th Cir. 1963).
 
 
 2
 On December 23, 1959, Hollywood Golf Estates (hereinafter referred to as Estates) and the Nello L. Teer Company (hereinafter referred to as Teer) entered into a written contract whereby Teer agreed to raise the level of certain land at Hollywood, Florida for Estates, by using a minimum of 1,250,000 cubic yards of fill. The contract provided for a unit price of 45 cents per cubic yard of fill. Teer stopped operations in July, 1961, after placing 275,936 cubic yards of fill, and sued Estates for rescission of the contract plus recovery on quantum meruit, claiming misrepresentations by Estates as to the amount of 'hard' digging, and also claiming mutual mistake of fact as to the nature of the soil. Estates impleaded Teer's surety, United States Fidelity & Guaranty Company, and counterclaimed for damages, interest and attorney fees, on the ground that Teer had breached its contract.
 
 
 3
 After Teer stopped work, Estates entered into a new contract with Arundel Corporation to complete the dredging and filling at a unit price of 62.5 cents per cubic yard.
 
 
 4
 At the first trial, the district court found that Teer's claims were without merit, and that Estates was entitled to recover on its counterclaim and against Teer's surety. These holdings were affirmed by this Court, but the case was reversed and remanded because further proof was needed to determine the amount of damages to which Estates was entitled, and also because the district court awarded attorney fees to Estates in excess of the maximum permitted by Florida law. With respect to the question of the proper amount of damages, this Court stated:
 
 
 5
 'Yet, there is no proof in the record as to how much fill, if any, Arundel actually delivered, or whether its price of 62.5cents per cubic yard was the best obtainable after diligent efforts to mitigate thedamages had been made by Estates. Moreover, whereas the Teer contract recited that 470 acres were to be filled, the proof showed that Estates actually owned only 72 acres and had a purchase option on 97 more, a total of 169 acres. There was no evidence as to what rights or obligations Estates had as to the remaining 301 acres.' (324 F.2d 669, at 671)At the second trial, the district court found that Arundel's price of 62.5 cents was the best obtainable after diligent efforts to mitigate the damages had been made by Estates. It was also established that the contract with Arundel had been completed, and that Estates had paid Arundel for all fill delivered at the rate of 62.5 cents per cubic yard. The parties stipulated that Arundel had actually delivered 984,536 cubic yards of fill on the 470 acres; that Teer delivered 275,936 cubic yards, or a total of 1,260,475 cubic yards, an excess of 10,475 cubic yards over the 1,250,000 cubic yards called for by the contract between Estates and Teer.
 
 
 6
 Estates attempted to show at retrial that it had been given a ten-year oral option to purchase the 301 acres mentioned above from Mailman Brothers (the owners of the 301 acres, and the persons who had sold or optioned the other acreage to Estates). The district Court, however, found that Estates had failed to establish the existence of any such oral option. The court then awarded Estates the amount of $63,158.90, which was the difference between the Teer price and the Arundel price for the fill deposited by Arundel on the 72 acres owned by Estates and the 97 acres under written option to Estates. The court did not allow Estates' claim for damages with regard to fill placed by Arundel on the remaining 301 acres. When interest was added to the $63,158.90, the total awarded Estates was $74,527.50. The court then allowed Estates $9,250.00 as attorney fees, as being within the 12 1/2% Limitation imposed by Section 627.0905(2) Florida Statutes, F.S.A. From this judgment, both sides now appeal.
 
 
 7
 It is contended by Teer on appeal that the provisions of the contract between Estates and Arundel differed substantially from those in the contract between Estates and Teer, and that in failing to offer Teer the opportunity to rebid with Arundel under the modified plan, Estates failed to properly mitigate damages.
 
 
 8
 This contention was considered by the district court, and while there is a conflict in the testimony, there is evidence that Teer refused to negotiate a price to complete the contract, and that Teer insisted on 90 cents a yard to finish the contract. The trial court disposed of Teer's contention by stating:
 
 
 9
 'I am less impressed with the after default-- after suit for fraud and misrepresentation-- claim now made by Teer that he could have completed on the same basis as Arundel than I am impressed with his statement just before, at the time of and soon after default and suit, that on advice of counsel they would stop work and litigate.'
 
 
 10
 We agree with the district court, and affirm its finding of diligent mitigation by Estates.
 
 
 11
 Concerning the finding by the district court that Estates failed to establish the existence of a valid oral option to purchase the 301 acres from Mailman Brothers, we feel that such finding cannot be said to be clearly erroneous. The question remains, however, whether that finding is sufficient to dispose of Estates' claim that it is entitled to recover the difference between the Teer contract price and the Arundel price for the fill deposited by Arundel on the 301 acres. (It is conceded by Estates that it is limited to claim damages in the sum of $170,461.20, although it paid Arundel more than that amount, because Arundel deposited 10,475 cubic yards of fill in excess of the 1,250,000 cubic yards required by the Teer contract.)
 
 
 12
 As pointed out earlier, in remanding this case for a second trial, this Court stated: 'There was no evidence as to what rights or obligation Estates had as to the remaining 301 acres.' (324 F.2d 669, at 671.) This language was undoubtedly construed by the district court as compelling a determination whether Estates had a property interest in the 301 acres. Consequently, when Estates failed to prove the existence of an oral option to the court's satisfaction, Estates' claim for damages as to the 301 acres was disallowed.
 
 
 13
 We feel that the language,'rights or obligation as to the remaining 301 acres,' should not be so construed, but should be interpreted to mean that it was necessary for Estates to establish that it was more than a mere volunteer, and had an enforceable interest in the 301 acres (but not necessarily a property interest).
 
 
 14
 With regard to Estates' obligations as to the 301 acres, it is clear from the record that, aside from the fact that Estates paid Arundel upon completion of the contract, Estates expended numerous other sums in improving that acreage. For example, the land was surveyed, and about $65,000 was spent in clearing the land of mangroves for mosquito control. Furthermore, numerous random lots lying within the limits of the 301 acres were purchased by Estates from third parties.
 
 
 15
 The question remains, however, whether Estates had any enforceable rights to the 301 acres. At the second trial, A. L. Mailman (who with his brother owned the 301 acres) testified that he observed all of the work Estates was doing on the 301 acres, and that he saw some of the engineering drawings with regard thereto. He further stated that the work done by Estates was done to his satisfaction. We feel that this testimony is sufficient to establish an enforceable right as to the 301 acres on the part of Estates, since such testimony would be sufficient to bind Mailman to an implied promise to pay Estates for work performed by it, had Estates sought to collect payment from Mailman for the reasonable value of services rendered. The legal basis for such an enforceable right is stated clearly in Lewis v. Meginniss, 30 Fla. 419, 12 So. 19 (1892), where the Florida Supreme Court held as follows:
 
 
 16
 'It is a well-recognized principle of law that, where one person performs services for another at his request, or where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances which give rise to the presumption of a promise to pay for them, reasonable compensation may be recovered. The liability in such cases, in the absence of any special agreement, is founded upon a presumption of law that the party benefited undertakes to pay reasonable compensation for such services, but this presumption arises from, and is liable to be rebutted by, the circumstances of each particular case.'
 
 
 17
 On the basis of Mailman's testimony in the instant case, it would seem clear that after having observed the work being done by Estates, and after being satisfied with it, Mailman could not escape liability for the reasonable value of the benefits conferred upon him by Estates. See also I Williston, Contracts, 36 and 91A (3rd ed. 1957).
 
 
 18
 Another factor which may have influenced the district court in rejecting Estates' claim for damages as to the 301 acres, once the court had determined that Estates had failed to prove the existence of an oral option, is the following provision of the contract between Estates and Teer:
 
 
 19
 '1. CONTRACTOR (Teer) agrees to excavate by hydraulic dredge operation sufficient material so as to place 1,250,000 cubic yards of fill on property owned or under option to the OWNER (Estates), which said property may be generally described as a parcel of land consisting of approximately 470 acres located in Broward County, Florida, bounded by Washington Street on the North, Intra-Coastal Waterway on the East, Hallandale Beach Boulevard on the South, DeSoto Canal and 14th Avenue on the West.'
 
 
 20
 This contract further provided that Estates agreed to pay Teer for a minimum of 1,250,000 yards of fill at 45 cents per cubic yard. While it is true that the language quoted above indicates that Teer was to place the fill on land 'owned or under option' to Estates, it is also clear the property to be filled under the terms of the contract was 'a parcel of land consisting of approximately 470 acres * * *.' We believe this latter language should be controlling in determining the question of whether Estates is entitled to damages as to the entire 470 acres. That the entire parcel of land was within the contemplation of the parties at the time the contract was made is borne out by the fact that when the amount of fill deposited by Arundel over the entire parcel (984,539 yards) is added to the amount deposited by Teer (275,936 yards), the total is 1,260,475 yards, or only some 10,000 yards over the minimum of 1,250,000 yards to be deposited by Teer.
 
 
 21
 Based on the foregoing discussion, it follows that Estates is entitled to recover damages against Teer and its surety, not only for the difference between the Teer price and the Arundel price for the fill deposited by Arundel on the 72 acres and the 97 acres, but also as to the 301 acres. Therefore, we hold that Estates is entitled to a judgment of $170,461.20 plus interest.
 
 
 22
 With regard to attorney fees, it is Teer's contention that the district court erred in computing the amount of such fees on the basis of the amount of loss sustained plus interest, and that the fees should have been calculated on the basis of the principal alone. We find this contention to be without merit. Under Florida law, interest is allowable as an element of damages. See 18 Fla.Jur. 371, 'Interest,' Sec. 17. Section 627.0905(2), Florida Statutes, F.S.A., providing a maximum of 12 1/2% Of the judgment for attorney fees against a surety, states that the amount so recovered 'shall not be more than twelve and one-half per cent of the amount which the judgment or decree awards such plaintiff under the bond (exclusive of the costs of suit and attorney fees or compensation) * * *.' This statute does not exclude interest from the application of the 12 1/2%, but merely excludes costs of suit and attorney fees or compensation. Teer has cited no Florida case directly in point, and this Court will not read an exception into a statute clear on its face. Stuyvesant Insurance Co. of New York v. Nardelli, 286 F.2d 600 (5th Cir. 1961).
 
 
 23
 Teer also contends that the reasonableness of the attorney fees awarded Estates is unsupported by the record. We feel that the record supports the award of $9,250.00 made by the trial court. The court indicated, however, that its award would have been greater had it not been limited by the 12 1/2% Maximum. Since we have held herein that the amount of damages to which Estates is entitled is $170,461.20 plus interest rather than $62,158.90 plus interest as awarded by the district court, it may be that after further hearing on remand the district court might be justified in awarding additional attorney fees.
 
 
 24
 Accordingly, the case is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.
 
 
 25
 Affirmed in part; reversed and remanded in part.