NORITAKE CO., INC.,
Plaintiff–Appellant,

v.

M/V HELLENIC CHAMPION et al.,
Defendants–Appellees.

No. 80–1157

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Unit A

Oct. 9, 1980.

Frederick M. Boss, Robert A. Feltner, Houston, Tex., for plaintiff–appellant.

Royston, Rayzor, Vickery & Williams, W. Robins Brice, John M. Elsley, Houston, Tex., for defendants–appellees.

Before GEE, RUBIN and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

Plaintiff–Appellant Noritake Company, Inc. ("Noritake'") appeals from the largely adverse judgment entered after a nonjury trial in the district court below. Noritake's claim for $4,976.62 in damages was brought under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300–1315 (1976), and was within the federal courts' admiralty jurisdiction under 28 U.S.C. § 1333 (1976). Noritake alleged damage to the contents of 152 cartons of a 472–carton shipment of porcelainware that was shipped and temporarily stored by Defendant–Appellee Hellenic Lines, Ltd. ("Hellenic").[1]

The district court found Hellenic liable for damages to only 17 of the total of 152 damaged cartons, and awarded $556.56 to Noritake based on a stipulated per–carton figure—an award from which Hellenic does not appeal. The three points that Noritake argues on appeal are that: (1) the district court's finding that Hellenic was liable for only 17 of 152 damaged cartons was clearly erroneous because Hellenic failed to prove under section 1304(2)(d) of COGSA that the damage to the 138 remaining cartons was caused by an act of God unmixed with any negligence of Hellenic; (2) the district court erred in failing to award prejudgment interest to Noritake; and (3) the district court erred in denying attorneys' fees to Noritake. For the reasons set out below, we affirm the district court on points one and three, but reverse in part and remand the case on point two regarding prejudgment interest.

## I. FACTUAL BACKGROUND OF THE LITIGATION

In early April of 1976, Noritake delivered 472 cardboard cartons packed with dinner sets and other articles of porcelainware to Hellenic at Colombo, Sri Lanka. Hellenic carried these cartons to the Port of Houston on the *M/V Hellenic Champion* under an exception–free bill of lading. When the cargo was unloaded at the Port of Houston on June 14, 1976, a checker employed by Hellenic noted that 17 of the cartons were water–stained. The entire shipment was stored in a pierside warehouse pending transfer to the inland carrier, Brown Express, Inc., who was to carry the cargo on to Noritake in Dallas.

On June 15, 1976, the Port of Houston area experienced severe, localized flash flooding from heavy rains. Though the weather bureau had predicted only a 15% chance of rain that day, the port area received some thirteen inches of rain within a few hours, while a local airport received less than two inches. Though they were

---

1. Noritake originally sued both Hellenic Lines, Ltd., and the ship on which the porcelainware was transported, the *M/V Hellenic Champion*; the district court dismissed the case as to the vessel, however, after finding that no in rem process was ever perfected against it.

stacked in tiers on wooden pallets, some of the cartons became wet from the flood waters. Initial efforts by warehouse personnel to move the cartons to a higher place in the warehouse were hampered when part of the floor near where the cartons were stacked gave way beneath the weight of the flood waters. Additionally, many of the warehouse personnel had already gone home by the time the water reached the floor level, and the flooding prevented others from being summoned. The crew of the *Hellenic Champion* was prohibited from helping move the cargo by labor contracts. The entire shipment was eventually moved to a dry portion of the warehouse, but no other efforts were made to safeguard the cartons or dry them out.

On June 24, 1976, Hellenic delivered 469 cartons from its warehouse to Brown Express in Houston for inland shipping to Dallas. Brown Express' clerk noted water damage to the exterior of 95 cartons in his records. When the shipment reached Dallas, a surveyor for Noritake determined that 152 cartons were noticeably water-stained. The surveyor chose 15 of those 152 cartons for inspection. He found salt crystals in and on approximately 75% of the tested boxes, and also noted that the packing materials had adhered tightly to the porcelainware, which could be attributed to either salt water exposure or flood-dissolved glue used in the manufacture of the boxes.[2] There was also breakage, which he attributed to the collapse of the wet cartons beneath the weight of cartons stacked above them. The shipment was rejected by Noritake's ultimate consignee and sold for salvage. Noritake's damages on the entire shipment were stipulated to be $4,976.26.

The district court interpreted COGSA to provide that once a plaintiff shows that cargo was damaged while in the custody of a defendant ocean carrier, the burden shifts to the defendant to establish a defense that, under the Act, exonerates him from liability. The court found that Hellenic had successfully established the act of God defense created by section 1304(2)(d) of COGSA, absolving Hellenic of liability for all but the 17 cartons noted as water-stained when unloaded from the ship. Based on this finding, the district court entered judgment for Noritake for $556.56, the value of 17 cartons; the judgment did not provide for prejudgment interest, and explicitly denied attorneys' fees.

## II. HELLENIC'S LIABILITY

In its conclusions of law, the district court held that Hellenic could absolve itself of liability if it could establish that the cartons were damaged by an act of God, as that term is used in section 1304(2)(d) of COGSA, that was unmixed with any negligence on Hellenic's part. The district court cited *Mamiye Brothers v. Barber Steamship Lines, Inc.*, 241 F.Supp. 99 (S.D.N.Y.1965), aff'd, 360 F.2d 774 (2d Cir.), *cert. denied*, 385 U.S. 835, 87 S.Ct. 80, 17 L.Ed.2d 70 (1966), for this proposition. *Mamiye Brothers* defined damage caused by act of God to be damage that could not have been prevented by reasonable foresight and care. Noritake does not challenge on appeal the district court's decision to follow the *Mamiye Brothers* case, and thus we do not consider that question. Rather, Noritake challenges as clearly erroneous the district court's decision that Hellenic was liable for damages to only 17 cartons.

In appeals of admiralty cases, as in other appeals, the appellant has the burden of establishing that the district court's finding was clearly erroneous. *McAllister v. United States*, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); *Marcona Corp. v. Oil Screw Shifty III*, 615 F.2d 206, 208 (5th Cir.1980); *Tittle v. Aldacosta*, 544 F.2d 752, 754 (5th Cir.1977); *Movible Offshore, Inc. v. M/V Wilkin A. Falgout*, 471 F.2d 268, 271–72 (5th Cir.1973). To prevail, Noritake must

**2.** Chemical tests of two samples taken from the cartons that were inspected individually by the surveyor confirmed salt water exposure, but on cross-examination, the surveyor acknowledged that those two samples could have come from among the 17 cartons that became wet while aboard the *Hellenic Champion*. Transcript at 45. Indeed, all 15 of the cartons that he inspected evidently could have come from those 17 cartons damaged while on the ship.

demonstrate that the district court's findings are without support in the record or that they were induced by an erroneous view of the law; the court of appeals is not a trier of fact, and will not lightly set aside factfindings of the trial court. *Chaney v. City of Galveston*, 368 F.2d 774, 776 (5th Cir.1966). A finding is clearly erroneous when, although there is enough evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed and that the district court could not permissibly find as it did. *Volkswagen of America, Inc. v. Jahre*, 472 F.2d 557, 559 (5th Cir.1973); *Movible Offshore, Inc., supra*, 471 F.2d at 271; 9 C. Wright & A. Miller, Federal Practice and Procedure §§ 2585, 2590 (1971 & 1980 Supp.). Questions of negligence in admiralty cases are treated as factual issues, and are thus subject to the clearly erroneous standard. *E.g., Valley Towing Service, Inc. v. S/S American Wheat, Freighters, Inc.*, 618 F.2d 341, 346 (5th Cir.1980); *Marcona Corp. v. Oil Screw Shifty III, supra*, 615 F.2d at 208; *S.C. Loveland, Inc. v. East West Towing, Inc.*, 608 F.2d 160, 166 (5th Cir.1979); *Safe Harbor Enterprises, Inc. v. Hill*, 301 F.2d 139 (5th Cir.1962).

■ We hold that it was not clearly erroneous for the district court to find that Hellenic had proved that the damages sustained at the warehouse were the result of the act of God unmixed with any negligence by Hellenic, and that Hellenic was therefore liable only for damages to 17 cartons. The district court found that the damage could not have been prevented by reasonable care and foresight because this amount of sudden rainfall and flooding sufficiently surpassed what might normally be expected by way of summer thunderstorms that it rose to the level of an act of God within the meaning of COGSA. *See Mamiye Brothers, supra*, 241 F.Supp. at 109. There is ample support in the record for this finding. Moreover, the district court's finding that Hellenic was not negligent after the danger became apparent is also supported by the record. Having reviewed the entire record, we are *not* left with a definite and firm conviction that a mistake has been committed and that the district court could not permissibly have found as it did. Therefore, the district court's holding as to Hellenic's liability must stand.

## III. PREJUDGMENT INTEREST

In its second point of appeal, Noritake urges that the district court erred in failing to award prejudgment interest to accompany the award for damages to the 17 cartons as to which Hellenic was found liable. Although the district court's pretrial order stated in its "Agreed Applicable Propositions of Law" that "[i]nterest may be awarded from the date the cargo was delivered from the carrier to the consignee," no mention was made of pretrial interest in either the district court's findings of fact and conclusions of law, or in its final judgment.

■ As a general rule, prejudgment interest should be awarded in admiralty cases—not as a penalty, but as compensation for the use of funds to which the claimant was rightfully entitled. Discretion to deny prejudgment interest is created only when there are "peculiar circumstances" that would make it inequitable for the losing party to be forced to pay prejudgment interest.[3] *See, e.g., Socony Mobil Oil*

---

3. Our past decisions indicate that "peculiar circumstances" may encompass a broad range of fact patterns. For example, a genuine dispute over a good faith claim in a mutual fault setting has been held to be a peculiar circumstance creating discretion to deny prejudgment interest. *Nat G. Harrison Overseas Corp. v. American Tug Titan*, 516 F.2d 89, 97 (5th Cir.), *modified on other grounds*, 520 F.2d 1104 (5th Cir. 1975); *Dow Chemical Co. v. Dixie Carriers, Inc.*, 463 F.2d 120, 123 (5th Cir.), *cert. denied*, 409 U.S. 1040, 93 S.Ct. 525, 34 L.Ed.2d 490 (1972). Other cases suggest that improper delaying tactics by the claimant might justify a discretionary denial of prejudgment interest. *See, e.g., Socony Mobil Oil Co. v. Texas Coastal & Int'l, Inc.*, 559 F.2d 1008, 1014 (5th Cir.1977); *American Zinc Co. v. Foster*, 441 F.2d 1100, 1101 (5th Cir.), *cert. denied sub nom. Ingalls Shipbuilding Div'n of Litton Systems, Inc. v. American Zinc Co.*, 404 U.S. 855, 92 S.Ct. 99, 30 L.Ed.2d 95 (1971). The trial courts may find other types of "peculiar" facts that would make it inequitable to award prejudgment in-

Co. v. Texas Coastal & International, Inc., 559 F.2d 1008, 1014 (5th Cir.1977); American Zinc Co. v. Foster, 441 F.2d 1100, 1101 (5th Cir.), cert. denied sub nom. Ingalls Shipbuilding Division of Litton Systems, Inc. v. American Zinc Co., 404 U.S. 855, 92 S.Ct. 99, 30 L.Ed.2d 95 (1971). Though the rule is easily stated, the many factual permutations under which the question of prejudgment interest arises require a closer look at our past cases.

■■■■ Most often, when a trial court awards prejudgment interest, it does so without explicit reference to the above-stated rule. When this happens, the trial court either has made an implicit finding that there are no peculiar circumstances that would create discretion to deny prejudgment interest, or, if it has found such circumstances, the trial court has declined to exercise the discretion created by the existence of the peculiar circumstances. Whether such circumstances exist is a question of fact, and the standard to be applied on review is the "clearly erroneous" standard. See Sinclair Refining Co. v. SS Green Island, 426 F.2d 260, 262 (5th Cir. 1970). But even if an appellant can demonstrate that it would be clearly erroneous to say that there are no peculiar circumstances, the appellant must further show that when the trial court declined the request to deny prejudgment interest, the trial court abused the discretion that was created by the peculiar circumstances. Though this court has reversed an explicit award of prejudgment interest, apparently because the appellant had met this stiff burden, see Kawasaki Zosensho v. Consulich Societa Triestina di Navigazione, 11 F.2d 836, 838 (5th Cir.1926), we have more often found that there was no error in the award of prejudgment interest. See Harrison v. Flota Mercante Grancolombiana, S.A., 577 F.2d 968, 988 (5th Cir.1978); Sabine Towing &

Transportation Co. v. Zapata Ugland Drilling, Inc. (In re M/V Vulcan), 553 F.2d 489, 490–91 (5th Cir.), cert. denied, 434 U.S. 855, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977); Brown v. Aggie & Millie, Inc., 485 F.2d 1293, 1295–96 (5th Cir.1973); Sinclair Refining Co. v. SS Green Island, supra, 426 F.2d at 262.

If the trial court explicitly denies prejudgment interest (rather than merely omitting any reference to it), then this is based on a factfinding that peculiar circumstances exist; the factfinding is sometimes explicitly set out, with the peculiar circumstances detailed in the court's findings of fact and conclusions of law, or it may be implicit in the denial of prejudgment interest without a listing of the circumstances.[4] If the trial court was not clearly erroneous in finding that peculiar circumstances exist, then its denial of prejudgment interest was discretionary. In most instances, we have not found such a denial to be an abuse of discretion. See Nat G. Harrison Overseas Corp. v. American Tug Titan, 516 F.2d 89, 97 (5th Cir.), modified on other grounds, 520 F.2d 1104 (5th Cir.1975); In re Dearborn Marine Service, Inc., 499 F.2d 263, 288 (5th Cir.1974), cert. dism'd sub nom. Monk v. Chambers & Kennedy, 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975); Dow Chemical Co. v. Dixie Carriers, Inc., 463 F.2d 120, 123 (5th Cir.), cert. denied, 409 U.S. 1040, 93 S.Ct. 525, 34 L.Ed.2d 490 (1972); Esso International, Inc. v. SS Captain John, 443 F.2d 1144, 1151 (5th Cir.1971); Chitty v. M/V Valley Voyager, 408 F.2d 1354, 1358 (5th Cir.1969); Haynes v. Rederi A/S Aladdin, 362 F.2d 345, 351–52 (5th Cir.1966), cert. denied, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557 (1967). In a few instances, the appellant has convinced this court that an explicit denial of prejudgment interest was an abuse of discretion. See Socony Mobil Oil Co. v. Texas Coastal & International,

terest: Esso Int'l Inc. v. SS Captain John, 443 F.2d 1144, 1151 (5th Cir.1971), suggests that analogs to such traditional equity doctrines as laches, election of remedies, and estoppel may justify a finding of peculiar circumstances.

**4.** Of course, in any admiralty case in which the trial court refuses to award prejudgment inter-

est, the best practice would be for it to detail the peculiar circumstances it has found, and specifically indicate that it is denying prejudgment interest as an exercise of the discretion created by the existence of peculiar circumstances.

*Inc., supra*, 559 F.2d at 1014; *Gulf Oil Co. v. Panama Canal Co.*, 481 F.2d 561, 570–71 (5th Cir.1973); *American Zinc Co. v. Foster, supra*, 441 F.2d at 1101.

If the trial court does not make any mention of prejudgment interest in its judgment or its findings of fact and conclusions of law, then it is more difficult to infer that the trial court has found peculiar circumstances and decided to exercise the discretion that those circumstances create. Nonetheless, this court may make that inference, and is especially likely to do so when the record clearly discloses peculiar circumstances, or when the case is of a type in which compensation for the delay between injury and judgment has probably been taken into account in determining damages. *See Britt v. Corporacion Peruana de Vapores*, 506 F.2d 927, 932 (5th Cir.1975) (personal injury claim); *Sandoval v. Mitsui Sempaku K.K. Tokyo*, 460 F.2d 1163, 1171 (5th Cir.1972) (dictum) (personal injury claim). But when no peculiar circumstances are disclosed on the face of the record, and the case is of a type in which peculiar circumstances are less likely to exist, we have reversed the judgment of the district court insofar as it fails to award prejudgment interest. *See Alcoa Steamship Co. v. Charles Ferran & Co.*, 443 F.2d 250, 256, (5th Cir.), *cert. denied sub nom. Underwriters at Lloyds London v. Alcoa Steamship Co.*, 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 94 (1971) (ship repair contract). We may, as we did in *Alcoa Steamship, supra*, simply modify the trial court's judgment to award prejudgment interest, or remand with directions to calculate and award prejudgment interest, *see Socony Mobil Oil Co. v. Texas Coastal & International, Inc., supra*, 559 F.2d at 1014. Because no peculiar circumstances appear in the record, and we are unable to infer their existence from the nature of the case, we remand with instructions to calculate and award prejudgment interest on the $556.56 judgment for Noritake.

## IV. NORITAKE'S ATTORNEYS' FEES

In its third asserted ground for appeal, Noritake argues that the district court erred in refusing to grant Noritake its attorneys' fees. The district court stated in its conclusions of law that "[t]he uncontroverted rule in admiralty cases is that attorney's fees are neither allowable nor taxable as costs." Noritake contends that the award of attorneys' fees was actually within the district judge's discretion under either general maritime law or Tex.Rev.Civ. Stat.Ann. art. 2226 (Vernon Supp.1979), and asks this court to reverse and remand so that the district court may have the opportunity to make a discretionary award of fees.

■ Although Congress undoubtably could have explicitly provided for the award of attorneys' fees to a party prevailing in a suit based upon COGSA, no such statutory authorization appears in the Act. Nor is there any other federal statutory authorization for the award of attorneys' fees in this type of admiralty proceeding. *See Dempsey & Associates, Inc. v. S.S. Sea Star*, 500 F.2d 409, 411 (2d Cir.1974). Absent some statutory authorization, the prevailing party in an admiralty case is generally not entitled to an award for attorneys' fees. *Sandoval v. Mitsui Sempaku K.K. Tokyo*, 460 F.2d 1163, 1171 (5th Cir.1972); *American Union Transport Co. v. Aguadilla Terminal, Inc.*, 302 F.2d 394, 396 (1st Cir.1962); *Compania Anonima Venezolana de Navegacion v. A.G. Solar & Co.*, 1977 A.M.C. 1786, 1789 (S.D.Tex.1977); *Kalmbach, Inc. v. Insurance Co. of the State of Pennsylvania, Inc.*, 422 F.Supp. 44, 46 (D.Alaska1976); *Crispin Co. v. M/V Korea*, 251 F.Supp. 878, 879 (S.D.Tex.1965). *Cf. Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (attorneys' fees are not ordinarily recoverable by prevailing party in nondiversity federal question cases in the absence of statutory authority). Although there are some judicially created exceptions to this general rule, none are applicable here.[5]

---

**5.** The first type of exception allows attorneys' fees to an indemnitee as against his indemni-

tor–not as attorneys' fees *qua* attorneys' fees, but as part of the reasonable expenses incurred

Further, we disagree with Noritake's contention that the district court acted under a misapprehension about its authority to award attorneys' fees. Though it stated that "[t]he uncontroverted rule in admiralty cases is that attorney's fees are neither allowable nor taxable as costs," the court was evidently aware of the exceptions to that rule and correctly believed them to be inapplicable. Both of the opinions the court cited as precedent for its statement–*A.G. Solar & Co., supra*, and *Crispin Co. v. M/V Korea, supra* –allude to the special circumstances that authorize deviation from the general rule.

Noritake also argues that a discretionary award of attorneys' fees is authorized in this admiralty case under Tex.Rev.Civ. Stat.Ann. art. 2226 (Vernon Supp.1979), which allows attorneys' fees as part of costs in cargo damage actions that are based upon state law.[6] Noritake cites *In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 288 (5th Cir.1974), *cert. dism'd sub nom. Monk v. Chambers & Kennedy*, 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975), and *Stuyvesant Insurance Co. v. Nardelli*, 286 F.2d 600, 604–05 (5th Cir.1961), in urging that admiralty courts may apply state law by reference absent a federal admiralty law

that preempts the state law. Hellenic argues that *Dearborn Marine* and *Nardelli* are distinguishable, and that incorporating into admiralty claims the various state laws allowing or prohibiting the award of attorneys' fees would prejudice the characteristic features of maritime law or disrupt the harmony it strives to bring to international or interstate relationships, citing *Kalmbach, Inc. v. Insurance Co. of the State of Pennsylvania*, 422 F.Supp. 44 (D.Alaska 1976).

We do not reach this question, however, because it appears from the record that Noritake never advanced this argument in the trial court. Nothing in the record or the trial transcript purports to invoke state law, much less article 2226 specifically. The district court's pretrial order stated in its "Agreed Applicable Propositions of Law" that the action was governed by COGSA, and Noritake did not except to this proposition or urge the partial applicability of any provision of state law. In response to questioning from the district judge on on the day of the trial, counsel for Noritake promised to file a "brief memo on attorney's fees after the trial has been conducted."[7] Although almost four months passed

in defending against the claim. *Cotten v. Two "R" Drilling Co.*, 508 F.2d 669, 671 (5th Cir. 1975); *Sommer Corp. v. United Fruit Co.*, 479 F.2d 1131, 1132–33 (5th Cir.1973); *Brock v. Coral Drilling, Inc.*, 477 F.2d 211, 217 (5th Cir. 1973); *Kelloch v. S&H Subwater Salvage, Inc.*, 473 F.2d 767, 771 (5th Cir.1973). This exception is clearly inapplicable in the case at bar, because in no sense can Hellenic be said to be Noritake's indemnitor.

The second type of exception allows the discretionary award of attorneys' fees in admiralty cases when the nonprevailing party has acted in bad faith in the litigation. *Vaughan v. Atkinson*, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed. 88 (1962). This sort of exception, and a related exception allowing attorneys' fees as part of a penalty exacted for willful disobedience of a court order, "are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations, unless forbidden by Congress." *Alyeska Pipeline Service Co., supra*, 421 U.S. at 259, 95 S.Ct. at 1622. Noritake's reliance upon *Compania Galeana, S.A. v. M/V Caribbean Mara*, 565 F.2d 358 (5th Cir. 1978) (per curiam), is not appropriate. Though that opinion states that "[t]he granting of attor-

ney's fees is discretionary in admiralty actions," *id.* at 360, reference to the precedent we cited for that statement–*Vaughan v. Atkinson, supra* –makes it clear that the discretion arises only when *Vaughan* –type bad faith is alleged. In this case, there was no such allegation of bad faith. Thus the *Vaughan* exception does not apply.

6. Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1979) provides in pertinent part:
   Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for . . . lost or damaged freight or express . . . may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees.

7. THE COURT [addressing counsel for Noritake]: You made inquiry concerning the handling of attorney's fees. How is that normally handled in these types of cases?

between the end of trial and the district court's entry of findings of fact and conclusions of law, no such memorandum appears in the record.

■■■■ "As a general principle of appellate review, this court will not consider a legal issue or theory that was not presented to the trial court." *Bliss v. Equitable Life Assurance Society*, 620 F.2d 65, 70 (5th Cir. 1980). "[I]t is well established that, in the absence of a miscarriage of justice, issues not raised or presented in the lower court will not be considered for the first time on appeal." *Excavators & Erectors, Inc. v. Bullard Engineers, Inc.*, 489 F.2d 318, 320 (5th Cir.1973). *See also, e.g., Martin Oil Co. v. Gulf Insurance Co.*, 605 F.2d 197, 199 (5th Cir.1979); *Gerasta v. Hibernia National Bank*, 575 F.2d 580, 585 (5th Cir.1978); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2588, at 749–50 (1971). Given all the circumstances of this case, we do not believe that a miscarriage of justice will result if we decline to consider this issue.

## V. CONCLUSION

For the foregoing reasons, the judgment of the court below is affirmed in part, and

> What I would do would be, assuming that I find for plaintiff, ask the parties to attempt to reach an agreement on the amount of attorney's fees. If that could not be done, I would set a separate hearing to determine what would be a reasonable fee.
> MR. BRICE [counsel for Hellenic]: Your honor, we would wholly object to the award of any attorney's fees against the defendant in a case of this nature. There is no authority for that proposition, as far as we are aware, and the pretrial order does not call for the assessment of attorney's fees.
> THE COURT: The pretrial order asked for a thousand dollars, I thought, in attorney's fees.
> MR. BRICE: Plaintiff's pleadings may so plead, but I don't believe it's in the pretrial order.
> THE COURT: I think it's in there somewhere. I've seen it.
> MR. BRICE: I would expect to find it in the plaintiff's complaint.
> THE COURT: Or in the proposed findings of fact and conclusions of law.
> MR. BRICE: I think it was in neither of the recent pleadings of plaintiff's.

reversed in part and remanded for calculation and award of prejudgment interest.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

> If I may speak to that issue, briefly: This Court, in 1975, held that the general rule in admiralty is that attorney's fees are neither allowable nor taxable as costs. This is *Crispin Company v. M/V Korea.*
> THE COURT: What is the cite for that?
> MR. BRICE: 251 Federal Supplement, 878, which is the southern district of Texas case, 1965. And this is reaffirmed in 1977, southern district of Texas case, which may be found in the American Maritime Case Reporter, 1977, AMC 1786. The style of this latter case is fairly detailed, but I will provide it to your clerk.
> THE COURT: I have written down the cite. I will take a look at those cases at recess.
> MR. BOSS [counsel for Noritake]: Your honor, we did ask for attorney's fees in our original complaint of $1,000, and I would like leave, perhaps, to file a brief memo on attorney's fees after the trial has been conducted.
> THE COURT: Fine. We will reserve that question until after the court rules on liability and see whether it's necessary for me to consider the question of whether or not fees are recoverable by either side in this type of case.
> Transcript at 14–16.