**INSURANCE COMPANY OF NORTH AMERICA,**
**Plaintiff–Appellee–Cross–Appellant,**

v.

**M/V OCEAN LYNX, a/k/a M/V OCEAN LINK, her engines, tackle, furnishings, etc., in rem, et al., Defendants,**

**Mar Shipping Line, Inc., a foreign corporation, Defendant–Appellee, Cross–Appellee,**

**A. Bottacchi S.A. De Navegacion, a foreign corporation, Defendant–Appellant, Cross–Appellee.**

**No. 89–5301.**

United States Court of Appeals, Eleventh Circuit.

May 18, 1990.

As Amended May 25, 1990.

Allan R. Kelley, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for Bottacchi S.A. De Navegacion.

G.J. Rod Sullivan, Jacksonville, Fla., for Ins. Co. of North America.

Mary Lou Rodon Alvarez, Schreibert, Rodon–Alvarez, P.A., Miami, Fla., for Mar Shipping Line, Inc.

Before JOHNSON, Circuit Judge, HILL* and HENLEY**, Senior Circuit Judges.

JOHNSON, Circuit Judge:

This case arises on appeal from the district court's judgment limiting the defendants' liability under the Carriage of Goods by Sea Act, 46 U.S.C.A. App. §§ 1300–15 ("COGSA"), and from the district court's

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

order granting the defendant Mar Shipping Line, Inc. ("Mar") attorneys' fees and pre-judgment interest on its cross-claim against the defendant A. Bottacchi, S.A. De Nave-gacion ("Bottacchi").

## I. FACTS

### A. *Background*

Educational Innovation Systems International, Inc. ("Edusystems") shipped 59 boxes of vocational and agricultural equipment to Asuncion, Paraguay on May 9, 1985. Through a freight forwarder in Miami, Meadows Wye and Company ("Meadows"), Edusystems entered into a contract with Mar, which is a non-vessel-operating common carrier,[1] for transportation of the cargo from Miami to Paraguay. Mar, acting as Edusystems' agent,[2] entered into a carriage contract with Bottacchi for shipment of the cargo from Miami to Buenos Aires, Argentina.[3] Bottacchi loaded the cargo onto the M/V Ocean Lynx, a vessel chartered by Bottacchi and owned by Nabadi Maritime, S.A. On June 7, 1985, the Ocean Lynx encountered rough weather, and the container holding the cargo was lost at sea.

Both Mar and Bottacchi supplied bills of lading. The Mar bill of lading consists of one piece of paper. The front identifies the parties and contains a block where the shipping cost is calculated. The back contains twenty-seven clauses in extremely fine print.[4] Clause one states that the carriage contract is subject to COGSA, and clause sixteen recites provisions of COGSA section 4(5), 46 U.S.C.A. App. § 1304(5), limiting Mar's liability for loss to $500 per package. Clause sixteen states,

In case of any loss or damage to or in connection with the goods exceeding $500.00 ... the value of the goods shall be deemed to be $500.00 per package ... unless the nature of the goods and a valuation higher than $500.00 shall have been declared in writing by the shipper upon delivery to the carrier and inserted in this bill of lading and extra freight paid if required ... [in which case] the carrier's liability, if any, shall not exceed the declared value....

The Bottacchi bill of lading states that it binds the owner of the cargo and that it supersedes all other agreements covering the shipment. The back of the bill of lading is also in fine print and contains provisions identical to the Mar bill of lading.[5]

Mar had filed a tariff with the Federal Maritime Commission. The tariff included a copy of Mar's bill of lading. Rule Twelve of the tariff provided for a declaration of increased valuation that would increase Mar's liability beyond $500 per package. In case of a declaration of excess value, Mar's tariff provided for additional freight charges. Bottacchi also had filed a tariff with the Federal Maritime Commission. Rule Twelve, "Ad Valorem Rates," states that "[a]n ad valorem or 2% value to be declared on bill of lading, shall be assessed on the following: Currency, Specie, Gold or Silver Bullion, Precious Metals N.O.S., and Negotiable Securities. Minimum bill of lading charge—$101.50."

Edusystems' freight forwarder, Meadows, and Mar's freight forwarder, Continental, had dealt with one another on numerous occasions. Meadows has acted as freight forwarder for Edusystems hundreds of times. On none of these occasions did Edusystems' representative declare the

---

**1.** A non-vessel-operating common carrier is defined by federal regulations as "a common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier." 46 C.F.R. § 510.2(1).

**2.** Edusystems may treat Mar as a common carrier for purposes of COGSA, but underlying carriers such as Bottacchi treat Mar as Edusystems' agent. *See Insurance Co. of N. Am. v. S/S Argosy,* 732 F.2d 299, 301 (2d Cir.1984); 46 C.F.R. § 510.2(k).

**3.** Buenos Aires was the transhipment port from which the cargo would be sent to Paraguay.

**4.** The Mar bill of lading is illegible. The district court stated that "the size of the letters give[s] new meaning to the words 'fine print.'" We can only agree.

**5.** The fine print on the Bottacchi bill of lading is clearer than that on the Mar bill of lading and can be read with the naked eye.

value of a shipment and pay added freight charges.

## B. *Proceedings in the District Court*

On March 28, 1986, Edusystems' insurer, Insurance Company of North America (the "plaintiff"),[6] filed a complaint against the M/V Ocean Lynx, *in rem,* Mar, Bottacchi, and Nabadi Maritime, S.A., claiming $244,820 in damages for the lost cargo.[7] Mar and Bottacchi answered asserting that their liability was limited to $500 per package under COGSA. Mar also filed a cross-claim against Bottacchi for Mar's damages, interest and costs in the action.

On January 9, 1987, Mar served the plaintiff with an offer of judgment of $29,500 plus interest and costs.[8] On the same day, Bottacchi served Mar with an offer of judgment of $34,500.[9] The plaintiff and Mar rejected these offers.[10]

The district court held a bench trial on September 8–9, 1987. The court found that under COGSA section 4(5) Mar's and Bottacchi's liability was limited to $500 per package lost. The court rejected the plaintiff's argument that Mar's bill of lading was illegible and therefore did not invoke COGSA section 4(5)'s limitation on liability. The court found that the print on the back of the Mar bill of lading appeared blurry, but stated that "[w]ith the aid of a magnifying glass ... most of the words and numerals can be read by a party examining the words and conditions stated therein." Nevertheless, the court found that the Mar bill of lading was sufficient to incorporate COGSA section 4(5)'s limitation of liability.

The court also rejected the plaintiff's argument that COGSA section 4(5) did not apply because Mar and Bottacchi did not present Edusystems with an opportunity to declare the cargo's value. The court stated that incorporation of COGSA in the bills of lading provided a fair opportunity to declare excess value as a matter of law. The court also found that Mar's tariff was valid and presented the plaintiff with an opportunity to declare the cargo's value. Accordingly, the district court entered judgment for the plaintiff against Mar for $29,500 on the plaintiff's complaint and judgment for Mar against Bottacchi for $29,500 on Mar's cross-claim.

On January 8, 1988, Mar moved to recover attorneys' fees and costs from Bottacchi for defending against the plaintiff's claim and to recover costs from the plaintiff. Mar claimed that it was entitled to attorneys' fees from Bottacchi for defending the main claim because it was an indemnitee of Bottacchi. Mar claimed that it was entitled to costs accrued after January 22, 1987 from the plaintiff because the plaintiff refused Mar's offer of judgment.[11] On January 15, 1988, Bottacchi moved the court to deny Mar pre-judgment interest and to tax costs against Mar because Mar rejected Bottacchi's offer of judgment.

In an order dated February 22, 1989, the district court granted Mar's motion against Bottacchi, awarding Mar $22,262 in attorneys' fees. The court also awarded Mar $563 in costs against the plaintiff. Finally, the court denied Bottacchi's motion to limit Mar's pre-judgment interest and awarded Mar the same amount of pre-judgment interest from Bottacchi as the court had awarded the plaintiff from Mar.

In this appeal, we first consider whether the district court erred in holding that Mar and Bottacchi have limited liability under COGSA section 4(5). Second, we consider whether the district court erred in holding

---

6. The plaintiff had issued marine insurance covering the shipment of this cargo. The plaintiff paid Edusystems a total of $201,972 on the loss of the cargo.

7. The Ocean Lynx and Nabadi Maritime were never served and are not involved in this appeal.

8. This offer provided $500 per package of cargo lost.

9. Bottacchi asserts that $34,500 reflected $500 per package in damages plus pre-judgment interest and costs up to January 8, 1987.

10. Bottacchi's offer of judgment inexplicably is not included in the record on appeal.

11. By asserting entitlement to costs after January 22, 1987, Mar allowed the plaintiff 10 days plus three days for mailing to respond to Mar's offer of judgment.

that Mar could recover attorneys' fees from Bottacchi for the cost of defending against the plaintiff's claim. Finally, we consider whether the district court erred in ruling that Mar could recover pre-judgment interest from Bottacchi for the period after Bottacchi's offer of judgment.

## II. STANDARD OF REVIEW

■ The district court's interpretation of a statute is subject to *de novo* review by this Court. *Keys Jet Ski, Inc. v. Kays,* 893 F.2d 1225, 1227 (11th Cir.1990). The district court's findings of fact are subject to "clearly erroneous" review in this Court. *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

## III. ANALYSIS

### A. *Limited Liability*

COGSA section 4(5) provides as follows: Neither the carrier nor the ship shall in any event become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. 46 U.S.C.A. App. § 1304(5). Congress enacted the COGSA limitation on liability in 1936 in order to restrain the superior bargaining power wielded by carriers over shippers by setting a reasonable limitation on liability that the carriers could not reduce by contract. *Sony Magnetic Prods., Inc. v. Merivienti O/Y,* 863 F.2d 1537, 1542 (11th Cir.1989).

■ Courts have developed two preconditions to invoking COGSA section 4(5)'s limitation on liability. First, the carrier must give the shipper adequate notice of the $500 limitation by including a "clause paramount" in the bill of lading that expressly adopts the provisions of COGSA. *Brown & Root, Inc. v. M/V Peisander,* 648 F.2d 415, 420 (5th Cir.1981); *General Elec. Co. v. MV Nedlloyd,* 817 F.2d 1022, 1029 (2d Cir.1987); 46 U.S.C.A. App. § 1312. Second, the carrier must give the shipper a

fair opportunity to avoid COGSA section 4(5)'s limitation by declaring excess value. *Brown & Root,* 648 F.2d at 420 & n. 11; *General Elec.,* 817 F.2d at 1028.

■ The clause paramount establishes three things. First, it makes COGSA applicable at times when it would not apply of its own force. *Brown & Root,* 648 F.2d at 420. Second, COGSA's provisions are deemed incorporated into the bill of lading. *Id.* Third, nothing in the bill of lading can increase the carrier's liability under COGSA, which overrules any clause in the bill of lading that conflicts with COGSA. *Id.*

■ The *Brown & Root* court discussed what is necessary for a carrier to meet the second precondition to invoking COGSA section 4(5)'s limitation on liability: that the carrier afford an opportunity for the shipper to declare excess value. In *Brown & Root,* the carrier had included a clause paramount in its bill of lading. The bill of lading, however, also included a clause stating that "in no case" would the liability of the carrier exceed $500. Moreover, the bill of lading contained no blank space where the shipper could write in excess valuation. Nevertheless, the court found that the shipper had an opportunity to declare excess valuation for two reasons:

First, COGSA was expressly incorporated in the bill of lading to thereby bring into play § 4(5). Next, and far more significantly, the published tariff which has the effect of law very carefully gave [the s]hipper a choice of valuations by a choice of precisely definable freight rates.

*Id.* at 424 (citations omitted). *Brown & Root* thus adopted a system of constructive notice of an opportunity to declare excess valuation. *Id.* Either a clause paramount in the bill of lading or a valid tariff filed with the Federal Maritime Commission that includes an opportunity to declare excess value according to COGSA section 4(5)'s provisions is sufficient to afford the shipper an opportunity to declare excess value. *Brown & Root,* 648 F.2d at 424.

In the present case, the plaintiff first argues that the Mar bill of lading was

illegible and therefore did not provide shippers with notice of COGSA section 4(5)'s limitation on liability. The plaintiff also argues that Bottacchi's tariff failed to provide shippers with an opportunity to declare excess value.

### 1. Mar's Bill of Lading

■ The district court found that the back of Mar's bill of lading, which contained a clause paramount and a clause reciting COGSA section 4(5), could not be read without the aid of a magnifying glass.[12] In *Nemeth v. General S.S. Corp.*, 694 F.2d 609, 611–12 (9th Cir.1982), the Ninth Circuit held that "microscopic" print on a bill of lading was insufficient to give the shipper a fair opportunity to avoid COGSA section 4(5). This holding is persuasive; print that cannot be read with the naked eye can hardly impart notice. In the present case, however, Meadows, Edusystems' agent, maintained multiple copies of the Mar master bill of lading in its files,[13] and yet Meadows' representative, Albert Fabrikant, testified that in preparing hundreds of bills of lading for Edusystems he had never read the provisions on the reverse side. Meadows certainly had an opportunity to read these copies of Mar's bill of lading.[14] Accordingly, the plaintiff's argument that Edusystems was not afforded an opportunity to avoid COGSA section 4(5)'s limitation of liability lacks merit. *See Cincinnati Milacron, Ltd. v. M/V American Legend*, 784 F.2d 1161, 1166 (4th Cir.) (Phillips, J., dissenting), *rev'd*, 804 F.2d 837 (4th Cir.1986) (*en banc* court reversed panel opinion on the basis of dissent of Phillips, J.); *Carman Tool & Abrasives, Inc. v. Evergreen Lines*, 871 F.2d 897, 900 n. 6 (9th Cir.1989); *Aetna Ins. Co. v. M/V Lash Italia*, 858 F.2d 190, 194 (4th Cir.1988); *see also First Pennsylvania Bank v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1122 (3rd Cir.1984).

■ The plaintiff also fails to address the district court's holding that Edusystems did not desire to avoid COGSA section 4(5)'s limitation on liability by opting for a higher freight charge. The court found that Edusystems had chosen to rely on its policy with the plaintiff to cover any losses. In *General Elec.*, the Second Circuit ruled that where the shipper was experienced and the record showed that the shipper had never taken any steps toward actually declaring excess value, the court would not allow the shipper to challenge the adequacy of its opportunity to declare excess value. *General Elec.*, 817 F.2d at 1029. Similarly, in the present case, Edusystems had made hundreds of shipments with Mar without ever inquiring into declaring excess value. Under these circumstances it is reasonable to conclude that Edusystems did not wish to insure against losses twice and chose to rely on its policy with the plaintiff.

### 2. Bottacchi's Tariff

■ Rule 12 of Bottacchi's tariff provides that an *ad valorem* rate shall be applied to shipments of certain commodities. It does not provide for the method through which a shipper of goods other than the listed commodities can avoid COGSA section 4(5)'s limitation on liability. Bottacchi's bill of lading, however, does contain a clause paramount invoking the provisions of COGSA, and clause sixteen of Bottacchi's bill of lading recites the provisions of COGSA section 4(5). In *Brown & Root*, the court found that such a clause was sufficient to give the shipper constructive notice of a fair opportunity to declare excess value. "COGSA was expressly incorporated into the bill of lading to thereby bring into play § 4(5)." *Brown & Root*, 648 F.2d at 424. Once COGSA was incorporated, the court held, the provisions of COGSA section 4(5) spelled out how a ship-

---

**12.** The Mar bill of lading in the present case was doubly unreadable because it had been photocopied many times, leaving the fine print on the reverse side completely indecipherable.

**13.** Meadows actually prepared the Mar bill of lading in the present case.

**14.** Some of Mar's bills of lading were printed clearly. *See* Mar Shipping Lines' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, Exhibit A.

per could declare excess value, and the burden was on the shipper to declare excess value. *Id.* at 425.

COGSA § 4(5) does not prescribe that the face of the bill of lading contain a specific space or blank in which the increased valuation is to be inserted nor does it provide that the carrier rather than the shipper must actually make the notation. The phrase "unless the nature and value of such goods have been declared by the shipper before shipment and inserted into the bill of lading" [, COGSA § 4(5),] clearly puts the burden on the shipper to make the determination as between value limitations and the making of the declarations.

*Id.* at 424. Accordingly, the plaintiff's argument based on Bottacchi's tariff lacks merit.

B. *Attorneys' Fees*

1. Indemnity Action

Bottacchi argues that the district court erred in awarding attorneys' fees to Mar for defending against the plaintiff's claim. Bottacchi argues that Mar's claim is governed by COGSA, which does not provide for attorneys' fees, and therefore under the American Rule Mar cannot recover attorneys' fees. Mar argues that it was Bottacchi's indemnitee and therefore can recover attorneys' fees expended in defending against the plaintiff's claim.[15]

 Congress has not explicitly provided for the award of attorneys' fees in COGSA actions. *Noritake Co. v. M/V Hellenic Champion,* 627 F.2d 724, 730 (5th Cir. Unit A 1980). In admiralty cases, moreover, the general rule is that attorneys' fees are not awarded. *Platoro Ltd. v. Unidentified Remains of a Vessel,* 695 F.2d 893, 905 (5th Cir.1983). In the case of an indemnitee, however, the indemnitee can recover attorneys' fees from his indemnitor as part of the reasonable expenses of defending a claim. *See Cotten v. Two "R" Drilling Co.,* 508 F.2d 669, 671 (5th Cir. 1975); *Noritake,* 627 F.2d at 724 n. 5; *see*

*also Maseda v. Honda Motor Co.,* 861 F.2d 1248, 1256 (11th Cir.1988) (Florida law); *Nitram, Inc. v. Cretan Life,* 599 F.2d 1359, 1372 (5th Cir.1979).

Bottacchi claims that the present case was not an indemnity action, pointing to the form of the district court's judgment, which did not use the term "indemnity." Bottacchi also argues that COGSA provided Mar's exclusive remedy in this case, and that therefore Mar's case could not have been one for indemnification. Mar argues that the pre-trial order in this case stipulated that indemnification was an issue, and that the district court's February 22, 1989 order found that Mar was an indemnitee.

 Mar's cross-claim against Bottacchi stated a prima facie case under COGSA. The joint pre-trial stipulation of Mar and Bottacchi, however, stated that Mar "would claim reasonable attorney's fees against A. Bottacchi, S.A. pursuant to [Mar's] cross claim for indemnity."[16] The pre-trial order controls the future course of the action, and Mar was not required to amend the pleadings to reflect the indemnity issue. *Feazell v. Tropicana Prods., Inc.,* 819 F.2d 1036, 1040 (11th Cir.1987) (pre-trial stipulation); Fed.R.Civ.P. 16(e); 3 J. Moore, *Moore's Federal Practice* ¶ 16.12 (2d ed. 1989).

 The real parties in interest in this case were the plaintiff and Bottacchi, and any claims recoverable by the plaintiff against Mar also would have been recoverable by Mar against Bottacchi. Mar's expenditures defending the main claim, moreover, benefitted Bottacchi by limiting Bottacchi's liability. Under these circumstances, we hold that Mar was an indemnitee of Bottacchi and can recover attorneys' fees. *Cf. Strachan Shipping Co. v. Koninklyke Nederlandsche Stoomboot Maalschappy, N.V.,* 324 F.2d 746 (5th Cir.1963) (where jury found that carrier acted properly and stevedore acted negligently causing injury,

---

**15.** Mar acknowledges that it cannot recover attorneys' fees expended in its indemnification action against Bottacchi.

**16.** The parties failed to include the pre-trial order in the record on appeal. Accordingly, we rely on the pre-trial stipulation between Bottacchi and Mar.

carrier could recover from the stevedore attorneys' fees expended defending the main action despite the absence of an express contract of indemnification).

### 2. Attorneys' Fees and COGSA Section 4(5)

 Bottacchi also argues that Mar's attorneys' fees are part of Mar's overall damages in this case and therefore limited by COGSA section 4(5). Mar argues that attorneys' fees are excluded from the calculation of general damages under COGSA, and that therefore attorneys' fees do not fall under the $500 per package limitation that is applied to damages under COGSA. The district court found that the language in clause sixteen of Bottacchi's bill of lading, which recited provisions of COGSA section 4(5), was distinguishable from "red letter" clauses limiting liability for "any claim." The court found that

> [c]lause sixteen attempts to do no more than protect a carrier against exposure to substantial liability for the loss of highly valuable cargo when the shipper has not declared the higher value and paid an additional freight charge on it. For this reason, clause sixteen does *not* operate as a red-letter clause.

The district court's interpretation of COGSA section 4(5) is correct. The statute does not purport to include all types of claims in the $500-per-package limitation. *Cf. Noritake*, 627 F.2d at 729 (awarding pre-judgment interest in a COGSA action). Accordingly, Mar's attorneys' fee claims are not limited by COGSA section 4(5).

### C. *Mar's Pre–Judgment Interest*

 As a general rule, pre-judgment interest should be awarded in admiralty cases. Pre-judgment interest is not a penalty, but compensation to the plaintiff for the use of funds that were rightfully his. *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1550 (11th Cir.1987) (citing *Noritake*, 627 F.2d at 728). The court has discretion to deny pre-judgment interest

only when "peculiar circumstances" make it inequitable for the losing party to pay pre-judgment interest. *Id.; Parker Towing Co. v. Yazoo River Towing, Inc.*, 794 F.2d 591, 594 (11th Cir.1986) (peculiar circumstances include cases involving a genuine dispute about liability and cases of apportioned fault). We review the district court's decision on whether to award pre-judgment interest for abuse of discretion. *Parker Towing*, 794 F.2d at 594.

 In the present case, the district court found that no peculiar circumstances existed to justify denying pre-judgment interest. Bottacchi argues that its offer of judgment was a peculiar circumstance and that therefore the district court abused its discretion in denying pre-judgment interest in this case. Bottacchi's argument does not take into account Mar's simultaneous offer of judgment to the plaintiff, which the plaintiff rejected. It would have been foolish for Mar to accept Bottacchi's offer of judgment after the plaintiff rejected Mar's offer.[17] Accordingly, the district court did not abuse its discretion in holding that peculiar circumstances did not exist in this case precluding an award of pre-judgment interest.

### IV. CONCLUSION

We AFFIRM the district court's holding that Mar and Bottacchi have limited liability under COGSA and the district court's awards of attorneys' fees and pre-judgment interest.

---

**17.** The district court's December 29, 1987 judgment taxed exactly the same amount of prejudgment interest against Mar in favor of the plaintiff as it taxed against Bottacchi in favor of Mar.