22 F.3d 523
 1994 A.M.C. 1758
 SPM CORPORATION
v.
M/V MING MOON,
Blue Anchor Line, a division of Transpac Container System,
Ltd., Appellee,
Yangming Marine Transport Corporation, Appellant,
Maher Terminals, Inc., Appellant.
 No. 93-5307.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 29, 1993.
Decided April 14, 1994.
 
 1
 Ernest H. Gelman (argued), Goldberg & Gelman, New York City, for appellee.
 
 
 2
 James M. Kenny (argued), Kenny & Stearns, New York City, for appellants.
 
 
 3
 Before: SCIRICA and ALITO, Circuit Judges and POLLAK,* District Judge.
 
 OPINION OF THE COURT
 LOUIS H. POLLAK, District Judge:
 
 4
 This admiralty case is before us for the second time. In our earlier disposition, SPM Corp. v. M/V Ming Moon, 965 F.2d 1297 (3rd Cir.1992), we decided certain questions related to defendants' liability to plaintiff, and then remanded the case to the United States District Court for the District of New Jersey for further consideration of claims for indemnification and attorney's fees by one defendant against two co-defendants. Defendants Yangming Marine Transport Corp. (Yangming) and Maher Terminals, Inc. (Maher) now appeal from the district court's judgment of April 21, 1993, which orders them to pay $61,556.15 in attorney's fees to defendant Blue Anchor Line (Blue Anchor).
 
 
 5
 Background: The underlying facts are not in dispute. Plaintiff SPM Corporation (SPM) was the importer and purchaser (with a view to resale) of machinery manufactured and owned by Sumitomo Heavy Industries (SHI). SHI engaged Blue Anchor, a non-vessel operating common carrier (NVOCC)[1], to arrange transport of the machinery from Yokohama to SPM, in Norfolk, in June 1988. Blue Anchor in turn contracted with Yangming, a ship operator and owner, to provide ocean carriage of SPM's machinery aboard the M/V Ming Moon. Blue Anchor negotiated a bill of lading to SPM, as consignee. Yangming, the ocean carrier, issued its own bill of lading to Blue Anchor's agent in Japan.
 
 
 6
 On the way to Norfolk, the M/V Ming Moon docked at Port Elizabeth, New Jersey. During the stopover, the machinery shipped by SHI and intended for SPM was temporarily removed and then restowed aboard the ship by Maher, Yangming's contract stevedore. The machinery was damaged during restowing, and was salvageable only for $15,000 in parts by the time it reached Norfolk. At trial Maher admitted negligence in handling the cargo. SPM filed suit against Blue Anchor, Yangming and Maher for damages of $265,175.
 
 
 7
 After a bench trial in 1991, the district judge ruled that the defendants' liability was statutorily limited to $500 each under the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. Sec. 1304(5), which states:
 
 
 8
 Neither the carrier nor the ship shall in any event be or become liable for any loss or damage in connection with the transportation of goods in an amount exceeding $500 per package ... unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.
 
 
 9
 The district court also ruled that Blue Anchor was entitled to indemnification from Yangming and Maher for damages it owed to SPM as well as for its attorney's fees in defending against SPM's complaint.
 
 
 10
 SPM appealed the judgment, arguing on a variety of grounds that the statutory damages limitation should not apply. We affirmed as to Yangming and Maher, but reversed the liability limitation as to Blue Anchor. We found that Blue Anchor's bill of lading specified a damages limitation of two dollars per kilogram, which in this case worked out to $40,800. M/V Ming Moon, 965 F.2d at 1301-02. We did not address the district court's ruling on indemnification and attorney's fees for Blue Anchor, but rather remanded for a corrected judgment and for final resolution of the undetermined claims. Id. at 1306.
 
 
 11
 The instant appeal arises out of the remand proceedings. After considering cross motions for summary judgment, the district judge ruled that (1) Yangming's and Maher's liability for indemnification damages to Blue Anchor was limited by the Yangming bill of lading to $500, and (2) Blue Anchor was entitled to $61,556.15 in attorney's fees from Yangming and Maher. In this appeal, Yangming and Maher challenge the ruling on attorney's fees.
 
 
 12
 Discussion: Appellants' arguments may be summarized as follows: (1) COGSA does not provide for, and is violated by, an award of attorney's fees; (2) even if attorney's fees are permissible in an indemnity context, indemnity is inappropriate here because Blue Anchor was a shipper in its relationship to Yangming, not Yangming's agent, and as such cannot recover from Yangming for claims that Blue Anchor paid to SPM; (3) even if Blue Anchor may recover attorney's fees, such fees are part of damages and cannot exceed the $500 damages limitation under COGSA; and, in any case, no attorney's fees are warranted because Blue Anchor's defenses were geared only to liability under Blue Anchor's own, independent, bill of lading to SPM, and those defenses did not benefit the appellants.
 
 
 13
 (1) Attorney's fees under COGSA: In its 1991 opinion, the district court ruled:
 
 
 14
 Although COGSA does not explicitly provide for indemnification or for the award of attorney fees, it does not prohibit them. Moreover, here the classic indemnity relationship exists: Maher, the agent for Yangming, has admitted causing the damage to SPM's cargo through its own negligence. Accordingly, the ultimate liability rests not with [Blue Anchor] Line, but rather with Yangming and Maher. In light of these circumstances, this court will permit [Blue Anchor] Line to recover the damages it owes to SPM and any reasonable attorney's fees from Yangming and Maher.
 
 
 15
 Joint Appendix (JA) at 84a-85a. In support of its ruling the district court cited the Eleventh Circuit's analysis in Insurance Co. of North America v. M/V Ocean Lynx, 901 F.2d 934, 941-42 (11th Cir.1990). In Ocean Lynx the court ruled that COGSA does not "include all types of claims in the $500-per-package limitation", and upheld attorney's fees in excess of that amount. Id. at 942.
 
 
 16
 Appellants argue that Ocean Lynx is simply wrong, being contrary to precedent and to the purposes of COGSA. First, Yangming and Maher argue that the case relied on in Ocean Lynx, Noritake Co. v. M/V Hellenic Champion, 627 F.2d 724 (5th Cir.1980), in fact bars attorney's fees under COGSA. To be sure, Noritake does recite that "[a] prevailing party in an admiralty case is generally not entitled to an award for attorneys' fees." Id. at 730. But Noritake also observes that "there are some judicially created exceptions to this general rule." Id. One such exception "allows attorneys' fees to an indemnitee as against his indemnitor--not as attorneys' fees qua attorneys' fees, but as part of the reasonable expenses incurred in defending the claim." Id. at n. 5.
 
 
 17
 Although this court has not previously addressed entitlement to attorney's fees in the specific context of COGSA, we have held, in keeping with Noritake, that indemnitees in admiralty are entitled to attorney's fees. Cooper v. Loper, 923 F.2d 1045, 1051-52 (3rd Cir.1991) (holding that district court erred in not awarding attorney's fees to indemnitees in an admiralty matter). Cooper may be taken as a good statement of the prevailing rule, both in this and other circuits, that attorney's fees are recoverable in admiralty by indemnitees. Cooper states that such fees are awarded on the theory that the indemnitee bore a burden properly belonging to the indemnitor. 923 F.2d at 1051 n. 7. Thus, only attorney's fees relating to defense of a claim properly belonging to the indemnitor may be recovered. Furthermore, the costs of prosecuting the indemnity claim itself may not be recovered. Id.
 
 
 18
 We are left with two questions in the case at bar. First, was Blue Anchor in the position of an indemnitee in its relationship to Yangming and Maher? Second, if such a relationship did exist, did the district judge award a proper amount of attorney's fees to Blue Anchor?
 
 
 19
 (2) Indemnity relationship: Appellants argue that the district court erred in finding Blue Anchor to be an indemnitee of Yangming and Maher. They first claim that there can be no indemnity because the NVOCC (Blue Anchor) is a shipper in its relationship with the carrier (Yangming). Appellants seem to be saying that as a "shipper", Blue Anchor was the agent of the plaintiff (SPM) and not of the defendant carrier or stevedore. They reason that because Blue Anchor was not an agent of Yangming and Maher, it should not be entitled to indemnity from those parties. Appellant's Br. at 16.
 
 
 20
 It is true that most maritime indemnity cases involve shipowners and stevedores, who have an agency relationship. See e.g. Cooper, 923 F.2d 1045 (3rd Cir.1991). Indemnity in that context arises out of a long-standing, judicially created, doctrine that stevedores and other contractors give shipowners an implied warranty of "workmanlike" services. Ryan Stevedoring, Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956); Cooper, 923 F.2d at 1050. Other cases indicate, however, that indemnity may arise in a broader range of relationships. For example, in Hudson Waterways Corp. v. Coastal Marine Serv., Inc., 436 F.Supp. 597, 602 (E.D.Tx.1977), the court explained that under tort principles, as opposed to contract, a passively negligent party in admiralty can recover indemnity damages from a primary negligent party. See also Parfait v. Jahncke, 484 F.2d 296, 303 (5th Cir.1973) (same).
 
 
 21
 The principle that passive tort-feasors may recover legal costs from active tort-feasors in indemnity is well established. See e.g. Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 117 (3rd Cir.1992) ("general rule is that an indemnitee may recover attorney's fees and costs incurred in defense of the liability indemnified against from the indemnitor"). In the instant case, Maher admits negligence in damaging SPM's cargo. There is no allegation that Blue Anchor did anything wrong--its liability arose entirely from its contractual relationship with SPM and was triggered by Maher's negligence. Accordingly, there appears no reason that Blue Anchor should not be indemnified for the costs and liability it incurred as result of Maher's negligence. The general principle allowing indemnity for secondarily liable parties survives under the regime of maritime law. M & O Marine, Inc. v. Marquette Co., 730 F.2d 133, 135 (3rd Cir.1984) ("when indemnification is sought either under a maritime contract or under a theory of primary/secondary negligence based on a maritime tort, federal maritime law applies" and permits such indemnification).
 
 
 22
 Admiralty law adds a small wrinkle to application of general tort principles by way of specifying the relationship of NVOCCs to carriers.[2] Blue Anchor's status as shipper with respect to Yangming does not, however, prevent Blue Anchor from being an indemnitee of Yangming. The only case law on point, Ocean Lynx, clearly allows the NVOCC to be indemnified by the carrier. In Ocean Lynx the Eleventh Circuit addressed a situation almost exactly analogous to the case at bar. A customer engaged a NVOCC to arrange transport of cargo. The NVOCC entered into a contract with a carrier for transport of the cargo on the Ocean Lynx. During the voyage, the customer's cargo was lost at sea, and the customer sued the carrier and the NVOCC. Both defendants were found liable at trial, but the NVOCC was granted indemnification, including attorney's fees, from the carrier. The carrier appealed.
 
 
 23
 The Eleventh Circuit noted that, under COGSA, the carrier treats the NVOCC as the customer's agent, although the customer treats the NVOCC as a carrier. 901 F.2d at 937 n. 2. The court found that as a result, the real parties in interest were the customer/shipper and the ocean carrier. Id. at 941. The NVOCC was interposed between them, but was a defendant in the same position as the carrier for purposes of the suit. Accordingly, the court found that the NVOCC had a right to indemnity from the co-defendant carrier for any liability arising from the carrier's actions. Id. That indemnity was held to include attorney's fees. Id.
 
 
 24
 Thus, we do not accept appellants' contention that Blue Anchor's status as a shipper in relation to Yangming should prevent its being an indemnitee. Blue Anchor's position as a statutory carrier with respect to the SPM put it in the position of being able to be sued by SPM. On the other hand, Blue Anchor's position as a shipper with respect to Yangming should allow Blue Anchor, in turn, to recover from Yangming any claims paid by Blue Anchor to SPM, if those claims arose from Yangming's negligence. Blue Anchor's liability resulted solely from Maher's negligence, and Maher--the stevedore--was Yangming's agent. Accordingly, we believe that the Ocean Lynx approach is correct, and that the district court correctly found Blue Anchor to be entitled to indemnity from appellants.[3]
 
 
 25
 (3) Amount of attorney's fees: Given that we find Blue Anchor to deserve indemnity from appellants, and accordingly to be entitled to attorney's fees, it remains to determine whether the district court awarded an appropriate amount of such fees to Blue Anchor. Yangming and Maher argue that the award of $61,556.15 was excessive. First, appellants claim that Blue Anchor sought attorney's fees as damages, as opposed to as a prevailing party. Reply Br. at 10. Because attorney's fees in an indemnity claim are an element of the indemnitee's damages, appellants claim that they are subject to the $500 limitation under COGSA, which acts as a "red letter clause" in Yangming's bill of lading.
 
 
 26
 To support their argument, Maher and Yangming cite various cases that refer to litigation expenses "as part of the damages." See e.g. Burris v. Bulk Carriers, Inc., 505 F.2d 1173, 1175 (3rd Cir.1974); Hanseatische Reederei Emil Offen v. Marine Terminals, 590 F.2d 778, 784 (9th Cir.1979); Lusich v. Bloomfield Steamship Co., 355 F.2d 770, 776 (5th Cir.1966). The cases that appellants cite, however, address only whether attorney's fees can be granted at all, and not whether they are to be included in any limitation under COGSA or a bill of lading.
 
 
 27
 We can find no authority for including attorney's fees in the statutory damages amount. If anything, the case law indicates otherwise. In Saks International, Inc. v. M/V Export Champion, 817 F.2d 1011, 1014 (2nd Cir.1987), the court referred to an independent "obligation to indemnify the primary defendant for his litigation expenses." And in Ocean Lynx, the court held that attorney's fees are not subject to the COGSA $500 limitation, even when sought as indemnity damages rather than as prevailing-party costs. 901 F.2d at 942; see also Noritake, 627 F.2d at n. 5 (attorneys' fees allowable "to an indemnitee as against his indemnitor--not as attorneys' fees qua attorneys' fees, but as part of the reasonable expenses incurred in defending against the claim").
 
 
 28
 Appellants argue next that the attorney's fees awarded by the district court are excessive because the NVOCC's legal expenses were incurred defending a claim running uniquely to Blue Anchor, and not to Yangming or Maher. Specifically, appellants argue that Blue Anchor's attorney's fees were incurred in defending against the higher liability limitation of Blue Anchor's bill of lading to SPM. Appellants' Br. at 17. Yangming and Maher argue that, because they had nothing to do with Blue Anchor's bill of lading to SPM, and were bound only by Yangming's bill of lading to Blue Anchor (which limited liability to $500), Blue Anchor's costs of defending its bill of lading to SPM cannot be found to have benefited appellants, and should not be indemnifiable.
 
 
 29
 The general rule for attorney's fees is that "an indemnitee may recover attorney's fees and costs in defense of the liability indemnified against from the indemnitor." Fleck, 981 F.2d at 117 (emphasis added); Cooper, 923 F.2d at 1051 n. 8. To the extent that Blue Anchor's bill of lading incorporated a liability limit in excess of the statutory maximum of $500, it is arguable that the excess amount is not "liability indemnified against from the indemnitor." The district judge found as much when he limited indemnity damages other than attorney's fees to $500. Because appellants did not have to indemnify Blue Anchor for the excess damages, it seems reasonable that they not be compelled to pay attorney's fees if Blue Anchor incurred them solely in defending against the higher liability limit, and not in presenting defenses that could benefit Yangming or Maher.
 
 
 30
 Blue Anchor contends, however, that its bill of lading was only one of many issues in its defense, and that most of its legal efforts did benefit appellants. Appellee's Br. at 9-10. Blue Anchor makes a persuasive argument that much of its defense was aimed at refuting plaintiff's claim that the removal of the cargo at Newark and the indirect route of the vessel M/V Ming Moon were unreasonable deviations. Id.
 
 
 31
 Appellants take a radically different position on the extent to which they benefited from Blue Anchor's defenses. In their brief, Yangming and Maher make the following argument:
 
 
 32
 expenditures by Blue Anchor in defending the main claim, which were all toward defending the bill of lading that it issued, did not benefit either Yangming or Maher as the terms of the bills of lading's limitation of liability provisions--and thus the defenses of each party--differed.
 
 
 33
 Appellants' brief at 21 (emphasis added). Thus, appellants argue that none of appellee's attorney's fees should be indemnifiable, because no part of Blue Anchor's defense benefited Yangming or Maher.
 
 
 34
 We find appellants' argument unpersuasive in light of the record before us. The district court's 1991 opinion, JA at 42a, focuses on Blue Anchor's defenses against SPM's allegations that the docking at Port Elizabeth and the removal and restowage of SPM's cargo constituted unreasonable shipping deviations. JA at 61a-67a. The district court found that the deviation claims were SPM's "primary argument" for liability in excess of COGSA's limitation. JA at 61a-62a. After considering Blue Anchor's arguments, the district court rejected plaintiff's arguments that either the docking at Port Elizabeth or the restowage should deprive defendants of the statutory damages limitation. Blue Anchor's defenses thus clearly benefited both Yangming and Maher. Accordingly, we find no merit in appellants' claim that Blue Anchor's attorney's fees are not indemnifiable. The record supports the district court's determination that Blue Anchor's principal defense benefited appellants, and that appellee is therefore entitled to indemnification for its defense costs.
 
 
 35
 Conclusion: In the district court Blue Anchor requested attorney's fees of $73,867.37. After the district judge properly reduced that sum by the amount expended on the indemnity claim itself, he awarded appellees $61,556.15.[4] Based on the foregoing discussions, we find the district judge's decision to be well within his discretion and correct as a matter of law. Accordingly, the judgment is affirmed.
 
 
 
 *
 Hon. Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 A NVOCC "means a common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier." 46 U.S.C.App. Sec. 1702(17)
 
 
 [2]
 See footnote 1, supra
 
 
 [3]
 Appellants also argue that Ocean Lynx is inapposite because it is factually distinct from this case. They argue that the bills of lading issued by the NVOCC and the carrier in Ocean Lynx were identical, whereas here Blue Anchor's bill of lading contained a substantially higher liability limitation than Yangming's did. Reply Br. at 3-4. Appellants argue that, as a result, the interests of the parties in Ocean Lynx were identical, while here they differed because Blue Anchor had an independent interest in defending its higher liability exposure. Id. Differences in the bills of lading and in the parties' defenses are relevant to the amount of attorney's fees or indemnification the indemnitee is entitled to. See infra. The differences in the bills of lading in this case do not, however, affect appellee's status as an indemnitee or the legal conclusion that indemnitees in admiralty may be awarded attorney's fees
 
 
 [4]
 Appellants argue that the amount of attorney's fees awarded is unreasonable in light of the fact that Blue Anchor's liability to SPM was only $40,800. We agree with the district court's finding that the more relevant comparative figure was not what plaintiff actually recovered from appellee, but rather the $227,913.76 originally sought by plaintiff. When compared with the amount of the original claim, we do not find the $61,556.15 awarded by the district court to be unreasonable