**In the Matter of PALMER JOHNSON SAVANNAH, INC., as owners of Tug Palmer Johnson, Georgia Registration GA9500LM, in a cause of action of exoneration from, or limitation of, liability, Petitioner,**

No. Civ.A. CV496–121.

United States District Court,
S.D. Georgia,
Savannah Division.

Nov. 19, 1997.

Gary A. Bubb, Jacksonville, FL, Hermann Coolidge, Jr., Mary Kathryn Hogan of Ranitz, Mahoney, Coolidge & Mahoney, Savannah, GA, for plaintiff.

George H. Chamlee, Chamlee, Dubus & Sipple, Savannah, GA, for defendant.

## ORDER

MOORE, District Judge.

Petitioner Palmer Johnson Savannah, Inc., ("Palmer Johnson") brought the above-captioned action, pursuant to the Limitation of Liability Act, 46 U.S.C.App. §§ 181–196, to exonerate itself or limit its liability resulting from a mishap at the Palmer Johnson boat basin. On May 20, 1997, this Court issued an Order granting Claimant Peter Harrison's Motion for Partial Summary Judgment, establishing Palmer Johnson's liability, and leaving the amount of damages as the only unresolved issue in this case.[1]

Subsequently, this Court conducted a bench trial to determine the amount of damages for which Palmer Johnson is liable to Mr. Harrison. Having considered the testimony and exhibits presented at trial, the parties' pleadings, stipulations, trial briefs,

---

1. That Order also held Palmer Johnson liable to the owners of the two other vessels involved in the accident, *EDEN BOUND* and *SEA LOVE*. Palmer Johnson has since settled with those owners, leaving the present dispute over damages between Palmer Johnson and Mr. Harrison as the only issue remaining in this case.

proposed findings of fact and law, and supplemental briefs, this Court enters the following Findings of Facts and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

### FINDINGS OF FACT

The *RUSSE NOIR* is a fifty-three foot Hallberg Rassy Model 53 sailing yacht owned by Mr. Peter Harrison, a British citizen and resident. Mr. Harrison brought the yacht to Palmer Johnson on July 15, 1995, to have an air conditioning system installed and other maintenance work performed. On April 5, 1996, Palmer Johnson's tug, the *PALMER JOHNSON*, broke its mooring lines and struck several docked vessels, including the *RUSSE NOIR*. The collision caused the *RUSSE NOIR* to break its mooring lines and propelled it across the narrow yacht basin where it collided bow first with the dock on the other side. The *RUSSE NOIR* sustained substantial damage to its hull at both the stem and stern areas.

Upon notification by Palmer Johnson of the mishap, Mr. Harrison dispatched his yacht captain, Marcus Fitzgerald, and a marine surveyor, Maitland Murray, both from Scotland, to Savannah to assess the damages and oversee repairs. Also sent to assess the damages were surveyors Anthony Knowles, hired by the yacht's underwriters, and David Scott, hired by Palmer Johnson. The three surveyors prepared and approved repair specifications for the yacht.

Palmer Johnson's surveyor, David Scott, testified at trial that, in his estimation, the repairs should have taken approximately thirty (30) days to complete. The repairs, however, took approximately eight months. In the interim, Mr. Harrison took a family vacation he had initially planned to take aboard the *RUSSE NOIR*. Because the *RUSSE NOIR* was unavailable, Mr. Harrison rented a power boat out of Miami and rerouted flights accordingly. Throughout this period, Mr. Harrison sent Mr. Murray and Mr. Fitzgerald to Savannah on various occasions to oversee the repairs and resolve

any delays. On December 6, 1996, Palmer Johnson completed the repairs of the *RUSSE NOIR* and released the yacht to Mr. Harrison.

### CONCLUSIONS OF LAW

The Court makes the following conclusions regarding Palmer Johnson's liability to Mr. Harrison.

#### Repair Costs

The parties have stipulated that Mr. Harrison is entitled to recover $59,226.85 for repairs that both sides agree resulted directly from the collision.

#### "Other Repairs"

■ Mr. Harrison seeks $4,281.76 for repairs that he asserts resulted from the accident but which Palmer Johnson contends were "owner's work" that was unrelated to the casualty.[2] These "other costs" include damage to a spinnaker pole dropped by Palmer Johnson while performing repair work, a generator and a hot water heater. Palmer Johnson admitted at trial to dropping the spinnaker pole. Mr. Harrison has submitted evidence that the generator and hot water heater were operational before the accident and damaged afterward. Palmer Johnson has submitted no evidence to the contrary. Accordingly, this Court concludes that these damages resulted from the accident. Therefore, Mr. Harrison's claim in the amount of $4,281.76 for "other repairs" is granted.

#### M.M. Murray Surveys

■ Testimony at trial confirmed Mr. Harrison's contention that it would be difficult to find a surveyor in the Savannah area that specializes in yachts like the *RUSSE NOIR*. Furthermore, Mr. Harrison expressed a great deal of hesitation about hiring a local surveyor with whom he had no prior dealings or knowledge. Consistent with this testimony, the Court finds that it was reasonable for Mr. Harrison to hire Mr. Murray from Scotland.

---

**2.** Mr. Harrison initially claimed $27,695.51 in "other repair costs." However, in his own Proposed Findings of Fact, Mr. Harrison eliminates

many of these costs as unrelated to the April 5 accident.

Claimant's Exhibit 2 produced at trial details the fees and expenses paid by Mr. Harrison to Mr. Murray. A credit note in that Exhibit reveals that Mr. Murray determined the amount of time he spent attending each of the three vessels damaged in the accident, then reimbursed Mr. Harrison for the flight costs that were attributable to work performed on the other two vessels. Mr. Harrison received an 81.5% refund for the first trip, as Mr. Murray apparently devoted only 18.5% of his time to the *RUSSE NOIR* during that trip. The Court finds that the other expenses incurred during that visit should likewise be reduced from $993.85 to $183.85.[3] With this reduction, the Court finds that the remaining fees and expenses paid by Mr. Harrison were reasonable. In sum, Mr. Harrison is entitled to recover a total of $23,268.58 from Palmer Johnson for Mr. Murray's fees and expenses.[4]

### Fitzgerald Maritime

Upon hearing of the accident, Mr. Harrison dispatched both Mr. Murray and Mr. Fitzgerald to assess damages and oversee repairs. The Court finds that Mr. Murray could have represented Mr. Harrison adequately by himself, and that Mr. Harrison cannot recover the fees and other expenses incurred from the duplicative services of Mr. Fitzgerald during this initial visit.

As stated earlier, Palmer Johnson's surveyor, David Scott, testified that repairs to the *RUSSE NOIR* should have taken approximately thirty days to complete. By August, however, it had become apparent to Mr. Harrison that Palmer Johnson viewed his repairs as a low priority. Mr. Harrison sent Mr. Fitzgerald from Glasgow to Savannah to move the repairs along in August 1996 and once again in October 1996. The Court finds that Mr. Harrison's concerns regarding the repair delays were reasonable and that he should be compensated for some of the expenses he incurred regarding Mr. Fitzgerald. *See Standard Marine Towing Serv., Inc., v.*

*M.T. Dua Mar*, 708 F.Supp. 562, 569 (S.D.N.Y.1989) (expenses of captain recoverable if reasonably necessary to protect vessel or to oversee repairs).

Not all of the costs claimed by Mr. Harrison are recoverable, however. Claimant's Exhibit 7 shows that Mr. Harrison paid Mr. Fitzgerald a flat rate of eighty-five pounds sterling ($137.70) for each day that Mr. Fitzgerald was in Savannah. Nothing produced at trial or in the record provides this Court with an accounting of exactly what Mr. Fitzgerald did during his stays in Savannah, aside from Mr. Fitzgerald's personal assurances that he pushed Palmer Johnson to maintain a tighter repair schedule. Furthermore, while the trip to Savannah beginning in August lasted only nine days, the trip beginning in October lasted forty-one days. No justification for the extended stay was provided to the Court. Finally, while Claimant's Exhibit 7 shows that Mr. Harrison paid $8,190.54 for Mr. Fitzgerald's expenses, it is unclear whether these expenses were directly related to work performed in furtherance of the repairs to the *RUSSE NOIR*. The Court finds, therefore, that Mr. Harrison is entitled to recover Mr. Fitzgerald's salary for the nine-day August 1996 trip, nine days of Mr. Fitzgerald's salary for the October trip, and air fare costs for both trips. These items total $4,634.82.

### Chartered Yacht and Air Flights

Mr. Harrison seeks to recover damages he incurred when his yacht was not repaired in time for the three-week vacation he had planned to take with family and friends beginning April 16, 1996. Mr. Harrison paid $19,369.00 for a replacement yacht out of Miami and spent $5,854.03 changing flight plans.

Testimony at trial made it quite clear that Mr. Harrison bought and uses the *RUSSE NOIR* for pleasure purposes only. Loss of use damages in admiralty is limited

---

3. Mr. Harrison's invoice reflects no expenses other than airfare, billed for the second trip. Furthermore, no reduction is necessary with regard to the two additional trips made by Mr. Murray for work performed solely on the *RUSSE NOIR*.

4. Since all remuneration was made to Mr. Murray and Mr. Fitzgerald in pounds sterling, the Court applies the 1.62 dollars per pound exchange rate shown at trial throughout this Order.

to the commercial context; an owner may not recover for the loss of use of a pleasure craft. *See The Conqueror,* 166 U.S. 110, 133, 17 S.Ct. 510, 41 L.Ed. 937 (1897) Mr. Harrison's claims for expenses related to his changed vacation plans, therefore, are denied.

### Attorney's Fees

 Mr. Harrison's claim for $24,315 in attorney's fees is denied. Attorney's fees generally are not recoverable in admiralty. *See Cantieri Navali Riuniti v. M/V Skyptron,* 802 F.2d 160 (5th Cir.1986). It is true that under a breach of a warranty of workmanlike performance claim, a shipowner may recover, as part of an indemnification claim, attorney's fees incurred in defending a claim by a third party. *See Strachan Shipping Co. v. Koninklyke Nederlandsche,* 324 F.2d 746 (5th Cir.1963), *cert. denied* 376 U.S. 954, 84 S.Ct. 969, 11 L.Ed.2d 972 (1964). "This indemnity rule [does] not extend, however, to recovery of fees for litigation against the party in breach to actually determine liability [and damages]." *Nathaniel Shipping, Inc., v. General Elec. Co.,* 920 F.2d 1256, 1268 (1991) (concluding that *Todd Shipyards Corp. v. Turbine Serv., Inc.,* 674 F.2d 401 (5th Cir.), *cert. denied* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982), mistakenly changed specific rule of indemnification into general rule and following more narrow formulation of the rule); *see also Dana Marine Serv., Inc., v. International Ship Repair & Marine Serv., Inc.,* 687 F.Supp. 565, 566 (S.D.Ala.1988) (same); *see generally* David W. Robertson, *Court–Awarded Attorney's Fees in Maritime Cases: The "American Rule" in Admiralty,* 27 J. Mar. L. Com. 507, 580 n. 186 (1996) (stating that *Todd Shipyards, Corp.* mistakenly interpreted *Strachan* and other cases as supporting broad proposition that any breach of a contractual warranty of workmanlike performance yields an attorney's fee award).

### "Personal Expenses"

 Mr. Harrison seeks $2,025 in reimbursement for faxes, telephone calls, and other expenses related to this accident. Mr. Harrison has no documentation to support this estimate of his personal expenses. This claim, therefore, must be denied as it is overly speculative.

### Prejudgment Interest

 As a general rule, prejudgment interest is awarded in admiralty cases to compensate a claimant for the use of the funds that he expended in relation to an accident. *See Insurance Co. of North America v. M/V Ocean Lynx,* 901 F.2d 934, 942 (11th Cir.1990). This Court has discretion to determine the amount of interest and the date from which it accrues. Accordingly, the Court finds that Mr. Harrison is entitled to interest at a rate of eight percent (8%) per annum accruing from November 27, 1996, the date on which Mr. Harrison paid Palmer Johnson for the repairs to his vessel.

### CONCLUSION

Pursuant to the foregoing findings of fact and conclusions of law, it hereby is **ORDERED** that judgment be entered in favor of the Claimant, Mr. Peter Harrison, in the amount of $91,412.01 plus prejudgment interest of eight percent (8%) per annum accrued from November 27, 1996.