JiMcKAY, Judge.
In this maritime personal injury case, the defendants, Maritime Overseas Corporation and Overseas Bulktank Corporation, appeal the trial court’s ruling which cast both of them in judgment and found that the M/V OVERSEAS ARCTIC was unseaworthy, that plaintiff was disabled until September 1995, that his monthly wage base was $5,355.00, that plaintiff was entitled to general damages in the amount of $9,000.00 as well as pre-judgment interest. We affirm the judgment of the trial court as to everything except the casting of Maritime Overseas Corporation in judgement which we reverse. FACTS
The plaintiff, Larry Nathan Lewis, is a Jones Act seaman who was injured aboard the M/V OVERSEAS ARCTIC while he was in the course and scope of his employment. In the early part of February 1995, Lewis was engaged in painting the electrical locker in the engine room. This task required the use of a fourteen foot ladder. Lewis, who weighed approximately 265 pounds, ascended and descended the ladder numerous times over a three to four day period without incident. However, on his final descent, the ladder collapsed under his weight and Lewis fell onto his buttocks.
Mr. Lewis was initially seen by doctors in Panama and given over the counter pain medication. Upon his return to the United States, he was first seen by Dr. Braud for his back pain on February 17,1995. He saw Dr. Braud several more times between then and May of 1995. Mr. Lewis admits to ^moving some heavy furniture on one occasion in April of that year. Dr. Braud released Mr. Lewis as fit for duty on May 22, 1995. Mr. Lewis returned to work for one day; however, something in his back was bothering him and he felt he needed to refrain from working. At this point, plaintiff saw Dr. Rauch-werk for shoulder and knee problems. He was discharged by Dr. Rauchwerk on September 13,1995.
PROCEDURAL HISTORY
Plaintiff brought this action against Overseas Bulktank Corporation and Maritime Overseas Corporation pursuant to the Jones Act for negligence and the general maritime law for unseaworthiness. The defendants made no challenge to plaintiffs Jones Act status, and plaintiff designated his claim as one in admiralty pursuant to Article 1732(6) of the Louisiana Code of Civil Procedure. Thus, the matter was tried before the bench on August 27, 1997. Prior to trial, the parties stipulated that Overseas Bulktank Corporation would respond to any judgment rendered in plaintiffs favor whether for Jones Act negligence or unseaworthiness under the general maritime law. The stipulation was accepted by the court and Maritime Overseas Corporation was dismissed from the action.
After trial, the court ruled for plaintiff and issued reasons for judgment. The trial court found that the ladder, which was part of the *1003 vessel’s equipment, collapsed under the weight of Mr. Lewis while he was using it in a normal manner. Consequently, the M/V OVERSEAS ARCTIC was unseaworthy. However, the court did not find that the vessel’s master or any fellow crew members were negligent. The trial court cast both defendants in judgment for plaintiffs general damages ($9,000.00), special damages (which it calculated at a monthly wage base of $5,355.00 from February 6, 1995, till September 13, |j!995, plus medical expenses), prejudgment interest and costs.
ISSUES
The principal issues raised on this appeal are: whether the trial court erred in casting both defendants in judgment; whether the trial court erred in finding that the M/V OVERSEAS ARCTIC was unseaworthy; whether the trial court erred in finding that plaintiff was disabled until September of 1995; whether the trial court erred in finding that plaintiffs monthly wage base was $5,355.00; whether the trial court erred in awarding general damages in the amount of $9,000.00; and whether the trial court erred in awarding pre-judgment interest.
LIABILITY OF MARITIME OVERSEAS CORPORATION
The parties stipulated that Overseas Bulktank Corporation would respond for any judgment rendered in plaintiffs favor whether for Jones Act negligence or for unseaworthiness under the general maritime law. Maritime Overseas Corporation was dismissed from the action. Therefore, the trial court erred when it rendered judgment against “defendants”, rather than just Overseas Bulktank Corporation.
UNSEAWORTHINESS
Unseaworthiness is a condition, not an act. It has been referred to as a species of liability without fault. The vessel’s owner warrants that the ship is seaworthy to those who are aboard to conduct the vessel’s business. It is for a breach of this warranty that liability is created. The person to whom the warranty is owed does not have to prove fault or negligence. A vessel owner is liable for the mere condition of unseaworthiness, irrespective of how it arose. Therefore, a shipowner may be held liable for an injury caused by the fault of no one aboard, and which those aboard did not have a reasonable opportunity to remedy when the condition of unseaworthiness is found to exist.
kin the instant case, plaintiff, a 265 pound seaman was engaged in the routine task of painting an electrical locker in the engine room of the M/V OVERSEAS ARCTIC when he fell from a ladder and was injured. Under the doctrine of seaworthiness, the owner of the vessel has a duty to provide a vessel that is reasonably fit for its intended use, and this duty to provide a seaworthy vessel requires that its gear, appurtenances, and operations must be reasonably safe. Drachenberg v. Canal Barge Co., Inc., 571 F.2d 912 (5th Cir.1978). Furthermore, a vessel is considered unseaworthy unless the vessel, its equipment, and crew are reasonably suited for the use for which they were intended. Cappiello v. Exxon Corp., 695 So.2d 1097, 1103 (La.App. 4th Cir.1997). In the instant case, one of the ship’s officers instructed a 265 pound seaman to use a ladder (part of the vessel’s equipment) to perform a routine task. The ladder failed and the seaman fell. The only evidence presented at trial indicates that plaintiff was using the ladder in a normal manner when it collapsed under his weight; there is no indication that plaintiff was using the ladder in an inappropriate manner. The trial court did not err when it found that the M/V OVERSEAS ARCTIC was unseaworthy.
DISABILITY AND CALCULATION OF LOST WAGES
The trial court found that plaintiff was disabled from February 6, 1995, until September 13, 1995, and determined that his monthly wage base was $5,355.00. In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). These are questions of fact that the trial court is in a far better position to evaluate than is this Court. Based on the evidence before us, *1004 there is no way we can find that the trial court erred or ^abused its discretion when it made its determinations.
GENERAL DAMAGES
Appellants contend that the trial court erred when it awarded Mr. Lewis $9,000.00 in general damages. A great burden must be met in order to overturn a trial court’s judgment awarding general damages. The Louisiana Supreme Court has gone so far as to state:
[T]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
Here, the plaintiff injured his back, right shoulder and knee, and received medical treatment for approximately eight months. We find the trial court did not abuse its wide discretion when it awarded plaintiff $9,000.00 in general damages.
PRE-JUDGMENT INTEREST
Finally, defendants contend that plaintiff should have been awarded interest not from the date of the accident but only from the date of judicial demand. Defendants are not correct; they even admit this is not the rule under the general maritime law at present. The determination of whether the plaintiff is entitled to pre-judgment interest initially depends on whether he recovers under federal or state law. Corliss v. Elevating Boats, Inc., 599 So.2d 434 (La.App. 4th Cir.1992). The instant case has been designated as one sounding in admiralty and comes under federal law. Under the federal law, the trial court has the discretion to deny pre-judgment interest from the date of loss only hwhere there are “peculiar circumstances” that would make it inequitable for the losing party to be forced to pay prejudgment interest. Noritake Co., Inc. v. M/V Hellenic Champion, 627 F.2d 724, 728 (5th Cir.1980). There is nothing in the instant case to make the awarding of prejudgment inequitable; defendants were aware of plaintiffs injury from the time it occurred and the amount of pre-judgment interest awarded was not great. Therefore, we conclude that the trial court acted properly when it awarded pre-judgment interest.
CONCLUSION
For the forgoing reasons, we affirm the trial court’s judgment as to Overseas Bulk-tank Corporation. However, the trial court erred in casting Maritime Overseas Corporation in judgment. Therefore, we amend the judgment to reflect that it is against only Overseas Bulktank Corporation and not Maritime Overseas Corporation.
AMENDED AND AFFIRMED.